DONALD W. FITZGERALD, State Bar No. 095348
THOMAS A WILLOUGHBY, State Bar No. 137597
JENNIFER E. NIEMANN, State Bar No. 142151
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
dfitzgerald@ffwplaw.com
twilloughby@ffwplaw.com
jniemann@ffwplaw.com

Proposed Attorneys for Zacky Farms, LLC

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>ZACKY FARMS, LLC, a California limited liability company,<br><br>Debtor-In-Possession. | CASE NO. 12-37961-B-11<br><br>DCN: FWP-2<br><br>Date: October 11, 2012<br>Time: 1:30 p.m.<br>Courtroom: 32<br>501 I Street, 6th Floor<br>Sacramento, CA |

**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO PAY PREPETITION WAGES, COMPENSATION AND EMPLOYEE BENEFITS**

Zacky Farms, LLC, a California limited liability company, debtor in possession in the above-titled bankruptcy case ("Zacky Farms" or the "Debtor"), hereby files this Emergency Motion for Authority to Pay Prepetition Wages, Compensation and Employee Benefits (the "Motion"), and respectfully represents:

**JURISDICTION**

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 9014-1(f)(4). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are 11 U.S.C. §§ 363(b), 507(a) and 105(a).

///

///

### REQUEST FOR RELIEF

2. By this Motion, the Debtor requests entry of an order that (i) authorizes but does not direct the Debtor to pay Employee Obligations, Employee Deductions and Employee Expenses (each as defined below), (ii) authorizes but does not direct the Debtor to continue its practices, programs and policies in effect as of the Petition Date with respect to all Employee Obligations (including allowing employees to use time off accrued, but unused, as of the Petition Date), Employee Deductions and Employee Expenses (each as defined below) and (iii) authorizes and directs the bank at which the Debtor maintains an account from which the Debtor's payroll obligations are disbursed and all other banks or lending institutions maintaining payroll and employee benefits accounts to honor and pay all prepetition and postpetition checks issued or to be issued and fund transfers requested or to be requested, by the Debtor in respect of the Employee Obligations, Employee Deductions and Employee Expenses. The Debtor also seeks authority to issue new postpetition checks or fund transfer requests with respect to prepetition obligations that may have been dishonored by the banks relating to the Employee Obligations, Employee Deductions and Employee Expenses, if necessary.

3. This Motion seeks authorization to pay only such amounts entitled to priority claim status under the provisions of section 507(a)

4. In support of this Motion, the Debtor relies upon the Declaration of Keith F. Cooper filed on October 9, 2012 (Dkt. No. 5) ("Cooper Decl."), along with all exhibits filed in support of that Declaration. In further support of this Motion, the Debtor relies upon the following points and authorities:

### FACTUAL BACKGROUND

5. On October 8, 2012 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of California. The Debtor remains as Debtor in possession pursuant to 11 U.S.C. §§1107 and 1108. Cooper Decl. ¶ 8.

6. The Debtor is currently engaged in the production, marketing, and distribution of a variety of fresh and frozen poultry products. The Company's operations include the breeding,

1 hatching, and growing of turkeys and chickens as well as processing and marketing of poultry
2 products. *Id*. ¶ 9.

3     7.    Zacky Farms employs approximately 1,000 employees (herein referred to as the
4 "Employees"), approximately 50 of whom reside in Zacky Farms' corporate office and
5 approximately 950 located throughout its plants, farms, and other facilities. Of the Debtor's
6 1,000 Employees, approximately 150 are employed on a full-time salaried basis, 826 are
7 employed full-time on an hourly basis, and 24 are employed part-time on an hourly basis. As a
8 result of the commencement of the Debtor's chapter 11 case, and in the absence of an order of
9 the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying
10 its pre-petition obligations to the Employees, including its obligations under various wage,
11 salary, retirement, healthcare, and other benefit programs (collectively, the "Employee
12 Obligations"). In addition, checks, wire transfers and direct deposit transfers issued in respect of
13 the Employee Obligations will be dishonored. To maintain Employee morale at this critical time
14 for the Debtor, and to minimize the personal hardship the Employees would suffer if pre-petition
15 Employee Obligations, Employee Deductions and Employee Expenses are not paid or honored
16 when due, the Debtor seeks authority to honor, in its discretion, such obligations, including
17 those described above. *Id*. ¶ 98.

18     8.    The Debtor's petition for relief under chapter 11 of the Bankruptcy Code will
19 very likely cause the Employees to question their future with the Debtor. While these
20 Employees have demonstrated loyalty to the Debtor despite the uncertainty during the months
21 prior to the commencement of this case, their search for a sense of stability with regard to
22 compensation and benefits may lead to an epidemic of Employee departures. A significant
23 deterioration in morale among Employees at this critical time undoubtedly would have a
24 devastating impact on the Debtor, its customers, the value of its assets and business, and its
25 ability to maximize value. *Id*. ¶ 99.

26     9.    The Debtor's Employees are essential to the success of the Debtor's business.
27 Given the seasonal nature of Zacky Farms, as described above, it is absolutely crucial to
28 maintain the Employees in place during and throughout the Thanksgiving processing and sales

season. The cost of replacing Employees and training new employees will outweigh the cost of honoring the pre-petition Employee Obligations. Thus, any significant number of Employee departures or deterioration in morale at this time will substantially and adversely impact the Debtor's business and result in immediate and irreparable harm to the creditors and estate. Consequently, it is critical that the Debtor continues the ordinary course personnel policies, programs and procedures that were in effect prior to the Petition Date. If the checks issued and fund transfers requested in payment of the Employee Obligations are dishonored, or if such accrued obligations are not timely honored post-petition, the Debtor's Employees will suffer extreme hardship and may be unable to pay their daily living expenses. Likewise, it would be inequitable to require the Debtor's Employees to bear personally any business expenses that were incurred on behalf of the Debtor with the expectation that they would be reimbursed. *Id.* ¶ 100.

**Pre-petition payroll**

10. Zacky Farms internally prepares most of the payroll for its Employees (except for one group of Employees who are on an ADP system). *Id.* ¶ 101.

11. In the ordinary course of its business, Zacky Farms issues payroll checks on four different schedules. All Zacky Farms Employees will have pre-petition and post-petition amounts accrued as of the Petition Date.

    a. Certain union and non-union plant Employees ("Plant Employees") are paid on a weekly basis. The Plant Employees are paid on a Friday, for the work performed for the Sunday through Saturday of the previous week. All of the Plant Employees receive paper checks. Zacky Farms' last payroll checks for the Plant Employees prior to the Petition Date were issued on October 5, 2012, and related to the one-week pay period from September 23, 2012 through September 29, 2012. Zacky Farms estimates that approximately 45% of such checks distributed on October 5, 2012 had cleared as of the Petition Date. The next payday for the Plant Employees will be October 12, 2012, and will relate to the pay period from September 30, 2012 through October 6, 2012.

///

1       b.      Field Employees paid on an hourly rate ("Field Employees") are paid on a bi-weekly basis. The Field Employees are paid on a Friday, for the work performed through Saturday of the previous week. All of the Field Employees receive paper checks. Zacky Farms' last payroll checks for the Field Employees prior to the Petition Date were issued on September 28, 2012, and related to the two-week pay period from September 9, 2012 through September 22, 2012. Zacky Farms estimates that all of such checks distributed on September 28, 2012 had cleared as of the Petition Date. The next payday for the Field Employees will be October 12, 2012, and will relate to the pay period from September 23, 2012 through October 6, 2012.

        c.      The majority of salaried Employees ("Salaried Employees") are also paid on a bi-weekly basis, on the alternate week from the Field Employees. The Salaried Employees are also paid on a Friday, for the work performed through Saturday of the previous week. Approximately 70% of the Salaried Employees are paid via direct deposit and the rest receive paper checks. Zacky Farms' last payroll checks for the Salaried Employees prior to the Petition Date were issued on October 5, 2012, and related to the two-week pay period from September 16, 2012 through September 29, 2012. Of the Salaried Employees who receive paper checks, the Debtor estimates that approximately 50% of such checks distributed on October 5, 2012 had cleared as of the Petition Date. The next payday for the Salaried Employees will be October 19, 2012, and will relate to the pay period from September 30, 2012 through October 13, 2012.

        d.      Management and certain other Employees ("Other Employees") are paid on a bi-monthly basis on the 15th and the last day of the month. All of the Other Employees are paid via direct deposit. Zacky Farms' last payroll checks for the Other Employees prior to the Petition Date were issued on September 30, 2012, and related to the pay period from September 16, 2012 through September 30, 2012. The next payday for the Other Employees will be October 15, 2012, and will relate to the pay period from October 1, 2012 through October 15, 2012. *Id*. ¶ 102.

    12.     Authorizing the Debtor to pay the pre-petition payroll to all Employees with the post-petition amounts due on time and without disruption is absolutely crucial to the success of this bankruptcy case. *Id*. ¶ 103.

13. The projected accrued and unpaid pre-petition payroll portion to be disbursed post-petition is expected to be approximately $1.8 million. *Id*. ¶ 104.

**Self-funded medical insurance plan**

14. Zacky Farms operates an approved self-funded insurance plan which provides medical, prescription, dental and vision insurance ("Health Plan") for its Employees. The period before enrollment eligibility, the amount of benefits and the Employee co-pay vary depending upon the Employee's position with Zacky Farms. Approximately 500 Employees participate in the Health Plan. *Id*. ¶ 105.

15. Zacky Farms contracts with HealthComp Administrators, Inc. ("HealthComp") to provide third-party administrative services for the Health Plan. HealthComp contracts with Anthem Blue Cross to allow Zacky Farms to have access to the preferred Blue Cross billing rates with providers. HealthComp makes payments from Zacky Farms' funds for Zacky Farms' obligations under the Health Plan. Zacky Farms pays HealthComp a fee each month per participating Employee, in addition to certain other fees, for HealthComp's services. *Id*. ¶ 106.

16. If the fees are not paid for HealthComp's service and there is no authorization for HealthComp to pay claims as due in the ordinary course of business, it is probable that the Blue Cross discounts will be lost and the Employees will be presented with significantly higher provider costs directly, approximately triple what the Employees currently pay. *Id*. ¶ 107.

17. Zacky Farms also contracts with Restat, LLC ("Restat") to provide third-party managed pharmacy benefit services in relation to the Health Plan. The agreement with Restat provides for claims processing and access to Restat's contracted retail, mail order and specialty network pharmacies. HealthComp makes payments to Restat from Zacky Farms funds for Zacky Farms' pharmacy benefit obligations under the Health Plan. *Id*. ¶ 108.

18. Zacky Farms also has a stop-loss insurance policy with Sun Life Assurance Company of Canada ("Sun") to insure Zacky Farms from catastrophic risk under the Health Plan. The stop-loss insurance covers Zacky Farms' expenses on behalf of its Employees under the medical and prescription drug plans after Zacky Farms reaches a pre-determined deductible. Specifically, the Sun stop-loss insurance begins after Zacky Farms has paid $175,000 per

individual enrolled in the Health Plan and entitled to benefits ("Covered Person"). Sun will pay up to $2 million per year per Covered Person, with unlimited lifetime maximum eligible expenses. The premiums for the stop-loss insurance are paid on a monthly basis by HealthComp from Zacky Farm funds based on the participating Employees each month. *Id*. ¶ 109.

19. Because the payments to HealthComp and Restat will likely be section 507(a)(5) priority claims, a failure to fund the payments in the near future could significantly harm the creditors of the bankruptcy estate. In addition, the agreements with HealthComp and Restat constitute executory contracts and any post-petition obligations under such contracts will have administrative priority until the contracts are ultimately rejected or, will have to be paid in full if Zacky Farms seeks to assume those contracts. *Id*. ¶ 110.

20. Additionally, all the reasons for avoiding Employee turmoil apply with equal or even greater force to continuing the Health Plan. *Id*. ¶ 111.

21. The Health Plan has three monthly expense components: (a) the monthly cost of the contracts with HealthComp, including a pass through of Anthem Blue Cross and benefit brokerage fees, and Restat; (b) the monthly premiums for the stop-loss insurance; and (c) monthly expenses that must be paid on behalf of or to Employees under the Health Plan. The Health Plan paid approximately $50,000 in claims on a weekly basis in 2011 and has operating expenses of approximately $12,000 on a weekly basis. Both of these expenses are provided to be paid in the cash collateral budget referenced above. The total amount projected to be paid through year end is $1.3 million. *Id*. ¶ 112.

**Sick Leave and Vacation Pay Obligations**

22. The Debtor also seeks authority, but not direction, to permit Employees to use vacation time and other paid time off, whether accrued before or after the Petition Date (collectively, "Paid Time Off"), in accordance with the Debtor's pre-petition policies. *Id*. ¶ 113.

23. **Vacation Time:** Regular full-time Employees accrue paid vacation time ("Vacation Time") based upon their position and the length of their employment. Employees may carry over accrued but unused Vacation Time hours from year to year within varying amounts based upon their position. *Id*. ¶ 114.

24. The Debtor seeks authority, but not direction, to allow Employees to utilize accrued unused vacation time in the ordinary course of business as well as to pay an Employee for accrued unused vacation upon termination at his/her final rate of pay, subject to the statutory cap of $11,725 (including any other pre-petition wages) per Employee for any such vacation accrued pre-petition. As of the Petition Date, the Debtor estimates that it owes approximately $1.1 million in total unused vacation pay. *Id*. ¶ 115.

25. **Sick Leave:** Most regular full-time Employees accrue unpaid sick leave based upon their position. Sick days carry over from year to year until a maximum of between 24 and 47 days is reached, based upon their position. *Id*. ¶ 116.

26. **Holidays:** Most regular full-time Employees receive eight paid holidays a year. *Id*. ¶ 117.

**Other Employee Benefits**

27. As part of the Debtor's Employee Obligations, the Debtor has also established a variety of benefit plans and programs (the "Employee Benefits") designed to assist its Employees and its Employees' eligible dependents in meeting certain financial burdens, including those that arise from illness, disability and death. The Debtor believes that all amounts and obligations related to Employee Benefits that were owed prior to the Petition Date have been paid in full except as noted herein. However, out of an abundance of caution, the Debtor seeks authorization, but not direction, to pay or otherwise honor these Employee Benefits. *Id*. ¶ 118.

28. As explained above, Zacky Farms maintains a self-funded Health Plan. All full time Employees who have met the applicable pre-enrollment eligibility requirements as described above are eligible to enroll in the Health Plan coverage. Employee contributions are made on a pre-tax basis. The Debtor requests authority to pay any pre-petition costs related to medical benefits in the ordinary course of business. *Id*. ¶ 119.

29. **COBRA**: The Debtor seeks to continue to perform its obligations under Section 4980B of the Internal Revenue Code to administer Continuation Health Coverage ("COBRA") (see 26 U.S.C. § 4980B) in respect to former Employees. The Debtor contracts with

HealthComp to administer COBRA, and former Employees enrolling in COBRA pay an approximate aggregate amount of $500 per month to the Debtor for COBRA benefits. This amount is paid to the Health Plan for the continued health coverage of these former Employees and uses any remaining amount to cover overhead costs associated with administering COBRA. The Debtor believes that all amounts and obligations related to COBRA benefits prior to the Petition Date have been paid in full. However, out of an abundance of caution, the Debtor requests authority to pay any prepetition costs related to COBRA benefits in the ordinary course of business. *Id.* ¶ 120.

30. **Life and Other Insurance**: Eligible Employees receive term life as well as accidental death and dismemberment ("AD&D") insurance for which 100% of the premiums are paid by Zacky Farms. The benefit amount of company paid insurance and eligibility is based on the type of position. The Debtor pays Sun approximately $7,000 per month for basic life insurance and AD&D insurance coverage premiums. The Debtor believes that all incurred, billed and HealthComp adjudicated amounts and obligations related to group life and AD&D insurance premiums billed prior to the Petition Date have been paid in full with the exception of the premium due September 2012. The Debtor requests authority to pay all prepetition costs related to group life and AD&D insurance coverage in the ordinary course of business. *Id.* ¶ 121.

31. The Debtor also offers eligible Employees the option to purchase supplemental AD&D coverage, currently provided by Sun. In addition, the Debtor offers Salaried and Other Employees the option to purchase supplemental life and long-term disability insurance, which are also currently provided by Sun. Employees participating in such optional insurance plans bear the premium costs associated with such coverage. While such coverage costs the Debtor little to nothing to provide to its employees, the Debtor seeks permission to continue to offer such insurance plans to its Employees. *Id.* ¶ 122.

32. Most Employees who have healthcare expenses that are not covered by the insurance plan may elect to participate in the Debtor's Health Care Flexible Spending Account ("FSA"). These same Employees may also elect to participate in the Debtor's Dependent Care

-9-

EMERGENCY MOTION FOR AUTHORITY TO PAY
PREPETITION WAGES, COMPENSATION AND
EMPLOYEE BENEFITS

Flexible Spending Account. Eligible Employees may make pre-tax payroll deductions to certain maximum amounts to pay for approved expenses. Employees determine what the total annual out-of-pocket expenses will be and how much they wish to set aside for the year. Equal amounts are withheld for each period throughout the calendar year. The Debtor has contracted with HealthComp to administer all FSA claims. HealthComp uses Zacky Farms funds to pay these claims. In accordance with FSA regulations the Debtor is obligated to pay all claims even if in excess of amounts withheld from the employee's paycheck in the event that employment is terminated prior to year-end. *Id.* ¶ 123.

33.  **Retirement Benefits Plan**: Zacky Farms has two 401(k) Retirement Savings Plans ("401(k) Plans"). Union Employees are eligible to enroll in a "union only" 401(k) Plan and have the opportunity to receive discretionary profit sharing contributions by Zacky Farms on either January 1st or July 1st after 12 months of service. The Union Employee contributions are fully vested and the profit sharing contributions vest on a progressive schedule with 100% vesting attained at 6 years. Non-Union Employees are eligible to enroll in a "non-union only" 401(k) Plan and have the opportunity to receive discretionary profit sharing contributions by Zacky Farms in the first quarter after 6 months of service. In addition, Zacky Farms includes a discretionary matching opportunity. The Non-Union Employee contributions and the Zacky Farms discretionary matching funds are fully vested. The profit sharing contributions vest on a progressive schedule with 100% vesting attained at 7 years. The 401(k) Plans are administered through Fidelity Investments. *Id.* ¶ 124.

34.  The Debtor deducts from Employees' paychecks 401(k) Plan contributions and loan payments. The Debtor issues payroll checks and forwards withheld 401(k) Plan contributions and loan payments to the plan administrator. Failure to timely forward these 401(k) Plan deductions may be a violation of the Employee Retirement Income Security Act of 1974, as amended, potentially resulting in personal liability for the Debtor's officers for such deducted amounts. The Debtor estimates that there will be a minimal amount of deducted but unremitted 401(k) Plan contributions and loan payments as of the Petition Date and requests the authority to pay such amount. *Id.* ¶ 125.

35. The Debtor believes that maintaining the 401(k) Plans is critical in maintaining Employee morale. Accordingly, the Debtor seeks authority to continue in its discretion the 401(k) Plans, and to pay administrative and other related expenses to maintain the 401(k) Plans. *Id.* ¶ 126.

36. **Employee Product Purchases**: Employees are eligible to purchase products from Zacky Farms and to pay for those products through a deduction from that Employee's next payroll check. The Debtor seeks permission to continue to offer to its Employees the ability to pay for the Debtor's products from future payroll check deductions. *Id.* ¶ 127.

37. **Prepetition Amounts Withheld from Employee Paychecks and Related Deductions and Payments.** The Debtor deducts from Employees' paychecks (as applicable): (i) payroll taxes and the Employer's portion of FICA and unemployment taxes; (ii) Employee contributions for health and disability related benefits and flexible spending accounts; (iii) Employee contributions to the applicable 401(k) Plan; (iv) legally ordered deductions such as wage garnishments, child support and tax levies; and (v) miscellaneous other items (collectively, the "Employee Deductions"). The Debtor forwards amounts equal to the Employee Deductions from its operating accounts to appropriate third party recipients. While the Debtor does not believe that any funds deducted from Employee paychecks were not forwarded to the appropriate third party recipients as of the Petition Date, out of an abundance of caution the Debtor seeks authority to forward to the appropriate parties any Employee Deductions that were not forwarded due to the commencement of this chapter 11 case. *Id.* ¶ 128.

38. **Reimbursable Expenses.** Eligible Employees may submit certain business related expenses to the Debtor for reimbursement (collectively, "Employee Expenses"). Employee Expenses include relocation, car, hotel stay, meals, parking and other travel expenses and business related costs. As of the Petition Date, the Debtor estimates that it owes approximately $10,000 in reimbursements. The Debtor seeks authority, but not direction, to pay such Employee Expenses and to continue to pay them post-petition in the ordinary course of business. *Id.* ¶ 129.

///

Case 12-37961    Filed 10/09/12    Doc 19

39.     Zacky Farms submits that the amounts to be paid pursuant to the Employee Benefits Motion are de minimis in light of the importance and necessity of preserving the Employees' services and morale and the difficulties and losses Zacky Farms and its estate will suffer if Employees leave in significant numbers.  Further, many of these obligations are not immediate, but rather will be satisfied over an extended period of time.  Zacky Farms also submits that there is ample justification for its belief that even the slightest delay in providing this relief to its Employees will hamper its operations and damage its estate and, as a consequence, Zacky Farms is anxious to reassure the Employees.  *Id*. ¶ 130.

40.     The requested relief also will reduce the administrative burden that otherwise would be imposed in this case.  The wages, salaries, commissions, sick leave and other employee benefits that the Debtor seeks to pay or otherwise honor generally constitute priority claims under the Bankruptcy Code pursuant to either: (i) the per employee $11,725.00 individual cap of section 507(a)(4) of the Bankruptcy Code; or (ii) the cap for employee benefits under section 507(a)(5) for the ***aggregate*** amount of any excess not utilized under section 507(a)(4).  *Id*. ¶ 131.

41.     Set forth below is a chart detailing the cost of honoring the employee obligations and whether such payments are anticipated to be priority claims under section 507(a)(4) and/or 507(a)(5).  *Id*. ¶ 132.

| Proposed Payment to or on Behalf of Employees | Total Number of Impacted Employees (rounded) | Total Amount Available under 507(a)(4) and then (5) in Descending Order | Estimated Total Pre-petition Amount proposed to be paid through 12/31/2012 | Notes |
|---|---|---|---|---|
| Payroll (507(a)(4)) | 1000 | $11,725,000 | $1,820,000 | Estimated at slightly more than 1 week from the Proposed Budget |
| Vacation Pay (507(a)(4)) | 860 | $9,905,000 | $1,124,000 | Estimated based on accrual through September 30, 2012 |
| Self-Funded Health Plan (507(a)(5)) | 800 | $8,781,000 | $390,000 | Accrued liability through September 30, 2012 |

| Self-Funded Workers Comp Plan (potentially a 507(a)(5)) | 1000 | $8,391,000 | $3.5 million | Accrued liability through September 30, 2012 |
|---|---|---|---|---|
| **Totals:** | | **$11,725,000** | **$6,834,000** | Estimated Amount available for balance of 507(a)(5) claims is: **$4,891,000** |

## LEGAL ANALYSIS

**A.    Payment of Employee Wages, Compensation and Benefits**

42.    As a result of the commencement of the Debtor's chapter 11 case, and in the absence of an order of the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying its pre-petition obligations regarding Employee Obligations, Employee Deductions and Employee Expenses, and the checks, wire transfers and direct deposit transfers issued in respect of the Employee Obligations, Employee Deductions and Employee Expenses will be dishonored.  Any delay in payment of the Employees' wages and salaries will be detrimental to the Debtor's relationship with its employees and its ability to maintain a stable workforce.  The Debtor faces the possibility that its business would be significantly impaired if its Employees do not report for work or choose to look for alternative employment.  At this early stage in the case, the Debtor cannot risk any disruption in its business caused by its inability to maintain a stable work force.  The amounts requested in the motion are reasonable and necessary when viewed in the context of the number of employees, the importance of preserving employee services and morale, and the harm to the Debtor and the estate if these amounts are not paid.  To maintain Employee morale at this critical time for the Debtor, and to minimize the personal hardship the Employees would suffer if prepetition employee-related obligations are not paid or honored when due, the Debtor seeks authority to honor in its discretion such obligations.

**1.    Immediate Payment of Pre-Petition Employee Wages, Compensation and Benefits is Necessary and is Authorized by 11 U.S.C. §§ 363(b), 507(a) and 105(a)**

43.    Courts routinely recognize the justifications set forth above for allowing a debtor to pay prepetition wages, compensation and benefits.  The Debtor has the right to adopt

reasonable employment policies pursuant to sections 1107 and 1108 of the Bankruptcy Code and may use property of the estate to continue its operations under section 363(b). Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate…" 11 U.S.C. §363(b)(1). Section 363(c)(1) allows the Debtor to use property of the estate in the ordinary course of business without court approval. Furthermore, courts recognize that a debtor-in-possession has a fiduciary duty to, among other things, protect and preserve the bankruptcy estate, including preserving an operating business' going concern value. *In re CoServ*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

44. In addition, section 507(a) of the Bankruptcy Code provides a list of priorities in distribution of the estate of the debtor. The fourth and fifth priorities are for the wages and benefits of employees of the debtor, respectively, up to $11,725, for unpaid wages and benefits earned within 180 days before the Petition Date; the eighth priority relates to employment taxes. These priority claimants are paid in full before the general unsecured creditors of the estate receive a dividend.

> (a)  The following expenses and claims have priority in the following order:
>
> (4)  Fourth, allowed unsecured claims, but only to the extent of $11,725 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –
>
> (A)  wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> . . .
>
> (5)  Fifth, allowed unsecured claims for contributions to an employee benefit plan –
>
> (A)  arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B)  for each such plan, to the extent of –
>
> (i)  the number of employees covered by each such plan multiplied by $11,725; less

        (ii)    the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

    (8)    Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for –

        (A)    a tax required to be collected or withheld and for which the Debtor is liable in whatever capacity;

        (B)    an employment tax on a wage, salary, or commission of a kind specified in paragraph (4) of this subsection earned from the Debtor before the date of filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;

(b)    Furthermore, section 105(a) of the Bankruptcy Code grants courts broad authority to carry out and enforce the provisions of Title 11 using equitable doctrines.

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. §105(a).

45.    The Debtor believes it is advisable and prudent under the circumstances described above to pay the prepetition wages, compensation and benefits due to its Employees as proposed. Priority payment to employees is authorized under section 507(a) and the requested relief merely affects the timing of such payment. The wages, salaries, commissions, sick leave and other Employee benefits that the Debtor seeks to pay or otherwise honor generally constitute priority claims under the Bankruptcy Code to the extent of $11,725 per Employee. Because a significant portion of the wages, salaries, commissions, sick leave and other Employee benefits that the Debtor seek to pay or otherwise honor likely constitute priority claims pursuant to section 507(a), which must be paid in full pursuant to section 1129(a)(9) of the Bankruptcy Code in order to confirm a plan of reorganization, such priority claims will be paid either now or in the near future. Making such payments now will not only prevent disruption of the Debtor's business and personal harm to Employees, but also will reduce the

administrative burden that otherwise would be imposed in this case.[1]

46. Furthermore, authorizing payment of such prepetition employment expenses is an appropriate exercise of the court's discretion under sections 363(b) and 105(a). *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989); see also *Northwest Engineering Co. v. United States Steel Workers*, 863 F.2d 1313, 1315 (7th Cir. 1988) ("If employees were treated in all respects as unsecured creditors, they would be inclined to desert a leaky ship, speeding up the firm's collapse. . ."). Pursuant to section 105(a), courts have invoked the "necessity of payment" doctrine[2] to authorize the immediate payment of a debtor's prepetition obligations to unsecured creditors before plan confirmation when such payment is essential to the continued operation of the debtor in a chapter 11 reorganization. *See In re Columbia Gas Systems, Inc.*, 171 B.R. 189, 192 (Bankr. D. Del. 1994) (to justify payment of one class of pre-petition creditors in advance of a confirmed plan, the debtor must show that payment is essential to the continued operation of the business); *In re Penn Central Transp. Co.*, 467 F.2d 100, 102 and n.1 (3d Cir. 1972) (pre-Code case recognizing "necessity of payment" cases permitting immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid).

47. The Ninth Circuit has recognized the "necessity of payment" doctrine. In *Burchinol v. Central Washington Bank (In re Adam's Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir, 1987), the Ninth Circuit discussed the existence of two competing "fundamental tenets" of bankruptcy: (1) equality in the treatment of all creditors; and (2) the rehabilitation of Debtor. The court stated that the rehabilitation of a debtor "may supersede the policy of equal treatment" of creditors, and went on to describe such situations, specifically mentioning the payment of pre-petition wages and benefits to employees. *Id.* ("Cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of

---

[1] The Debtor will not pay any prepetition wage or other claims in excess of the statutory cap.

[2] Alternatively called the "necessity of payment" rule.

unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts.").[3] Furthermore, the court went on to state that section 364(d), for example, "illustrates a Congressional willingness to subordinate the interests of pre-petition creditors to the goal of rehabilitation." *Id.*

48. In its discussion, the *Adam's Apple* court did not mention an earlier Ninth Circuit case, *In re B & W Enterprises, Inc.*, 713 F.2d 534 (9th Cir. 1983), which questioned whether the "necessity of payment" doctrine survived the 1978 changes to the Bankruptcy Code, and stated that, if it did, the court would apply the doctrine only to railroad cases "absent compelling reasons." *Id.* at 537. Ultimately, the court in that case declined to apply the doctrine because the appellants had not presented "sufficient justification" for extending the doctrine to the (non-railroad) debtor. *Id.* We note that numerous courts throughout the country have held that the doctrine did survive the 1978 Bankruptcy Code changes, and can apply to non-railroad Debtor. See *In re Ionosphere Clubs, Inc., supra*, at 175-176; *In re Just for Feet, Inc.*, 242 B.R. 821 (Bankr. D. Del. 1999); *In re Gulf Air*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (finding that payment of prepetition wage and benefit obligations was in the best interest of creditors and necessary for the successful reorganization of the debtor, the court granted the debtor's motion to pay prepetition employee related expenses). We also note that the *Adam's Apple* court in its discussion did not limit the doctrine to railroad cases only.

49. In numerous other recent chapter 11 cases, bankruptcy courts have approved payment of prepetition claims for wages, compensation, benefits and expenses pursuant to section 105(a) in this and in other districts. *See In re Western Pipeline, Inc.*, Case No. 09-21792 (Bankr. E.D. Cal. Feb. 10, 2009); *In re Barbeques Galore, Inc.*, Case No. 08-16036 (Bankr. C.D. Cal. Aug. 20, 2008); *In re Gottschalks Inc.*, 09-10157 (Bankr. D. Del. Feb. 10, 2009); *In re Special Devices, Inc.*, Case No. 08-13312 (Bankr. D. Del. Jan. 6, 2009); *In re Wickes Holdings, LLC*, Case No. 08-10212 (Bankr. D. Del. Feb. 5, 2008); *In re Frontier Airlines Holdings, Inc.*,

---

[3] *See also In re Ionosphere Clubs, Inc.*, *supra*, at 176 ("The policy of equality among creditors… may be of significance in liquidation cases under Chapter 7, however, the paramount policy and goal of Chapter 11, to which all other bankruptcy policies are subordinated, is the rehabilitation of the debtor.")

Case No. 08-11298 (Bankr. S.D.N.Y. Apr. 14, 2008); *In re PLVTZ, Inc.*, Case No. 07-13532 (Bankr. S.D.N.Y. Nov. 9, 2007).

50. With respect to the accrued and unpaid Employee Obligations, Employee Deductions and Employee Expenses, the Debtor request that, to the extent practicable, the applicable banks be directed to honor checks or fund transfer requests regardless of whether they were issued prior to or after the Petition Date. The Debtor has or will have on deposit sufficient funds in its disbursement account to satisfy all the Employee Obligations, Employee Deductions and Employee Expenses so that the bank will not be prejudiced by an order directing it to honor the Debtor's checks or fund transfer requests with respect to such amounts.

51. Finally, authorization of the payment of the Prepetition Employee Obligations shall not be deemed to constitute postpetition assumption or adoption of any policy, plan, program, or employee agreement pursuant to section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserving all of its rights under the Bankruptcy Code with respect thereto.

52. The Debtor seeks to avail itself of the protection and flexibility provided by the bankruptcy laws to reorganize and address the financial crisis that has befallen the Debtor. Wherefore, the Debtor seeks this court's permission to honor its prepetition obligations to its employees in order to prevent employee defection and harm to the Debtor's business, and to implement a seamless transition into chapter 11.

**2. The Payment of Pre-Petition Employee Wages, Compensation and Benefits is Necessary Under Federal Rule of Bankruptcy Procedure 6003**

53. Pursuant to the recently revised Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court may grant relief regarding a motion to pay all or part of a prepetition claim within 20 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. As described above, the Debtor's Employees are integral to the Debtor's operations. Failure to satisfy obligations with respect to the Employees in the ordinary course of business during the first 20 days of this chapter 11 case will jeopardize their loyalty and trust, causing Employees to leave the Debtor's employ and severely disrupting the Debtor's

1 operations at this critical juncture, as well as affecting the Debtor's going concern value.
Moreover, the Employees rely on their compensation, benefits and reimbursement of expenses
to pay their living expenses and the effect could be financially ruinous if the Debtor cannot pay
them in the ordinary course of business. Accordingly, the Debtor submits that it has satisfied the
requirements of Bankruptcy Rule 6003 to support immediate payment of its Employee
Obligations.

## NOTICE

54.   No trustee, examiner or creditors' committee has been appointed in this chapter 11 case. Notice of this Motion has been provided by e-mail, fax or overnight courier to the following parties in interest: (a) the Office of the United States Trustee, (b) the twenty (20) largest unsecured creditors of the Debtor (as identified in the lists filed pursuant to Bankruptcy Rule 1007(d)), (c) secured creditors, and (d) owners of the Debtor. As this Motion is seeking first day relief, notice of this Motion and any order entered hereon will be served as required by Rule 9014-1(f)(4) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of California. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtor respectfully submits that no further notice of this Motion is required.

## CONCLUSION

WHEREFORE, based upon the foregoing, the Debtor respectfully requests entry of an order as follows:

1.   Authorizing, but not directing, the Debtor to pay Employee Obligations, Employee Deductions and Employee Expenses;

2.   Authorizing, but not directing, the Debtor to continue its practices, programs and policies in effect as of the Petition Date with respect to all Employee Obligations (including allowing employees to use time off accrued, but unused, as of the Petition Date), Employee Deductions and Employee Expenses;

3.   Authorizing and directing the bank at which the Debtor maintains an account from which the Debtor's payroll obligations are disbursed and all other banks or lending

institutions maintaining payroll and employee benefits accounts to honor and pay all prepetition and postpetition checks issued or to be issued and fund transfers requested or to be requested, by the Debtor in respect of the Employee Obligations, Employee Deductions and Employee Expenses;

4. Authorizing the Debtor to issue new postpetition checks or fund transfer requests with respect to prepetition obligations that may have been dishonored by the banks in respect of the Employee Obligations, Employee Deductions and Employee Expenses, if necessary; and

5. For such other and further relief as the Court deems just.

Dated: October 9, 2012

          FELDERSTEIN FITZGERALD
          WILLOUGHBY & PASCUZZI LLP

          By: */s/ Thomas A. Willoughby*
              Thomas A. Willoughby
              Proposed Attorneys for Zacky Farms, LLC,
              Debtor and Debtor in Possession