DONALD W. FITZGERALD, State Bar No. 095348
THOMAS A WILLOUGHBY, State Bar No. 137597
JENNIFER E. NIEMANN, State Bar No. 142151
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
dfitzgerald@ffwplaw.com
twilloughby@ffwplaw.com
jniemann@ffwplaw.com

Proposed Attorneys for Zacky Farms, LLC

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>ZACKY FARMS, LLC, a<br>California limited liability<br>company,<br><br>        Debtor-In-Possession. | CASE NO. 12-37961-B-11<br><br>DCN: FWP-3<br><br>Date:    October 11, 2012<br>Time:   1:30 p.m.<br>Courtroom: 32<br>501 I Street, 6th Floor<br>Sacramento, CA |

**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO CONTINUE PRE-EXISTING SELF-FUNDED WORKERS' COMPENSATION PLAN AND TO PAY PRE-PETITION WORKERS' COMPENSATION CLAIMS AND RELATED OBLIGATIONS**

Zacky Farms, LLC, a California limited liability company, debtor in possession in the above-titled bankruptcy case ("Zacky Farms" or the "Debtor"), hereby files this Emergency Motion for Authority to Continue Pre-Existing Self-Funded Workers' Compensation Plan and to Pay Pre-Petition Workers' Compensation Claims and Related Obligations (the "Motion"), and respectfully represents:

**JURISDICTION**

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 9014-1(f)(4). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are 11 U.S.C. §§ 363(b), 507(a) and 105(a).

**REQUEST FOR RELIEF**

2. By this Motion, the Debtor requests entry of an order that (i) authorizes but does not direct the Debtor to maintain and continue the Workers Comp Plan (as defined herein), including the payment of claims of injured employees in accordance with the Workers Comp Plan (with such payments not to exceed $4,527,562 in the aggregate) and other amounts necessary to maintain the Workers Comp Plan; (ii) authorizes the Debtor to continue using its pre-petition Workers Comp Plan bank account at Wells Fargo Bank, N.A. for the purpose of administering the Workers' Comp Plan; and (iii) authorizes and directs the bank at which the Debtor maintains an account from which the Debtor's payroll obligations are disbursed and all other banks or lending institutions maintaining payroll and employee benefits accounts to honor and pay all pre-petition and post-petition checks issued or to be issued and fund transfers requested or to be requested, by the Debtor in connection with the Workers Comp Plan. The Debtor also seeks authority to issue new post-petition checks or fund transfer requests with respect to pre-petition obligations in connection with the Workers Comp Plan that may have been dishonored by the banks, if necessary.

3. In support of this Motion, the Debtor relies upon the Declaration of Keith F. Cooper filed on October 9, 2012 (Dkt. No. 5) ("Cooper Decl."), along with all exhibits filed in support of that Declaration. In further support of this Motion, the Debtor relies upon the following points and authorities:

**FACTUAL BACKGROUND**

4. On October 8, 2012 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of California. The Debtor remains as debtor in possession pursuant to 11 U.S.C. §§1107 and 1108. Cooper Decl. ¶ 8.

5. The Debtor is currently engaged in the production, marketing, and distribution of a variety of fresh and frozen poultry products. The Debtor's operations include the breeding, hatching, and growing of turkeys and chickens as well as processing and marketing of poultry products. *Id.* ¶ 9.

6.  As of the Petition Date, Zacky Farms employs approximately 1,000 employees ("Employees"), of whom approximately 50 reside in Zacky Farms' corporate office and approximately 950 are located throughout its plants, farms, and other facilities. *Id*. ¶ 98.

7.  Since January 1, 1979, with the consent of the State of California (Department of Industrial Relations), the Debtor has maintained a self-insurance program (the "Workers Comp Plan") for the payment of workers' compensation claims of injured employees. *Id*. ¶ 133.

8.  Zacky Farms contracts with Acclamation Insurance Management Services ("AIMS") to provide third-party administrative services for the Workers Comp Plan. AIMS exclusively represents and acts for Zacky Farms in all matters pertaining to Zacky Farms' liability for the Workers Comp Plan. AIMS makes payments from Zacky Farms' funds for Zacky Farms' obligations under the Workers Comp Plan. AIMS bills Zacky Farms monthly for its services. *Id*. ¶ 134.

9.  Zacky Farms also contracts with CorVel Healthcare Corporation ("CorVel") to provide third-party medical cost containment and managed care services for the Workers Comp Plan. The CorVel contract enables Zacky Farms to reduce expenses for medical services related to workers' compensation incidents. AIMS makes payments from Zacky Farms funds to CorVel for medical and prescription administrative services, in addition to certain other fees, as the services are performed in relation to workers' compensation incidents. CorVel fees are billed on a monthly basis. *Id*. ¶ 135.

10.  Zacky Farms also has an excess workers' compensation insurance policy ("Policy") with Midwest Employers Casualty Company for which 25% of the annual premium of $150,000 was paid on or about October 1, 2012, with the remainder financed in 10 equal installments. The current Policy was effective on September 1, 2012 and it is in place for one year. *Id*. ¶ 136.

11.  The Workers Comp Plan has three expense components: (a) the monthly cost of the administrative contracts with AIMS and CorVel; (b) the premium installments for the Policy; and (c) expenses that must be paid on behalf of Employees under the Workers Comp Plan. The Workers Comp Plan typically pays approximately $30,000 in claims and related allocated

expenses on a weekly basis and has operating expenses of approximately $6,400 on a weekly basis. These expenses are provided to be paid in the cash collateral budget attached to the Cooper Decl. The total amount projected to be paid through year end is $420,000. *Id.* ¶ 137.

12. To fund the Workers Comp Plan and to provide for the payment of claims thereunder, Zacky Farms established a separate checking account at Wells Fargo Bank solely for claims relating to the Workers Comp Plan. *Id.* ¶ 138.

13. To collateralize its obligations to make payments to injured employees under the Workers Comp Plan, Zacky Farms was required to, and did, acquire a letter of credit in the amount of $4,527,562 posted by Wells Fargo (the "Workers Comp LC"), the beneficiary of which is the State of California. The Workers Comp LC may be drawn by the State of California in the event Zacky Farms were to fail to make payments to injured employees in accordance with the Workers Comp Plan. *Id.* ¶ 139.

14. It is in the best interests to preserve the payments on the Workers Comp Plan post-petition for several reasons. First, the anticipated workers compensation claims payout appears to Zacky Farms to be less than the Workers Comp LC. Second, Zacky Farms is required by state law to maintain workers' compensation insurance. Zacky Farms has previously sought quotes for workers compensation insurance and it would cost Zacky Farms double or triple the amount Zacky Farms currently pays for the Workers Comp Plan if Zacky Farms was not self-insured. *Id.* ¶ 140.

**LEGAL ANALYSIS**

15. As a result of the commencement of the Debtor's chapter 11 case, and in the absence of an order of the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying any pre-petition obligations regarding the Workers Comp Plan. Any delay in payment of the Employees' claims under the Workers Comp Plan will be detrimental to the Debtor's relationship with its employees and its ability to maintain a stable workforce. The Debtor faces the possibility that its business would be significantly impaired if its Employees choose to look for alternative employment. At this early stage in the case, the Debtor cannot risk any disruption in its business caused by its inability to maintain a stable work force. The

-4-

EMERGENCY MOTION FOR AUTHORITY CONTINUE
PRE-EXISTING SELF-FUNDED WORKERS'
COMPENSATION PLAN

amounts requested in the Motion are reasonable and necessary when viewed in the context of the number of employees, the importance of preserving employee services and morale, and the harm to the Debtor and the estate if these amounts are not paid.  To maintain Employee morale at this critical time for the Debtor, and to minimize the personal hardship the Employees would suffer if pre-petition Workers Comp Plan obligations are not paid or honored when due, the Debtor seeks authority to honor in its discretion such obligations.

### 1. Immediate Payment of Pre-Petition Workers Comp Plan Obligations is Necessary and is Authorized by 11 U.S.C. §§ 363(b), 507(a) and 105(a)

16.    The Debtor has the right to adopt reasonable employment policies pursuant to sections 1107 and 1108 of the Bankruptcy Code and may use property of the estate to continue its operations under section 363(b).  Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate…"  11 U.S.C. §363(b)(1).  Section 363(c)(1) allows the Debtor to use property of the estate in the ordinary course of business without court approval. Furthermore, courts recognize that a debtor-in-possession has a fiduciary duty to, among other things, protect and preserve the bankruptcy estate, including preserving an operating business' going concern value.  *In re CoServ*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

17.    Pursuant to section 105(a), courts have invoked the "necessity of payment" doctrine[1] to authorize the immediate payment of a debtor's prepetition obligations to unsecured creditors before plan confirmation when such payment is essential to the continued operation of the debtor in a Chapter 11 reorganization.  *See In re Columbia Gas Systems, Inc.*, 171 B.R. 189, 192 (Bankr. D. Del. 1994) (to justify payment of one class of pre-petition creditors in advance of a confirmed plan, the debtor must show that payment is essential to the continued operation of the business); *In re Penn Central Transp. Co.*, 467 F.2d 100, 102 and n.1 (3d Cir. 1972) (pre-Code case recognizing "necessity of payment" cases permitting immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the

---

[1]  Alternatively called the "necessity of payment" rule.

business until their pre-reorganization claims shall have been paid).

18. The Debtor believes it to be in the best interests of this chapter 11 estate, the creditors thereof and the injured employees to continue the Workers Comp Plan without interruption and to continue to make payments to injured employees in accordance therewith. The Debtor contends benefits and expenses paid by an employer relating to a self-funded workers' compensation plan are entitled to priority under Bankruptcy Code section 507(a)(5) and this case is readily distinguishable from the recent United States Supreme Court case holding that priority under Bankruptcy Code section 507(a)(5) should not be given "premiums owed by an employer to a workers' compensation carrier." *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006).

19. In *Howard*, the Supreme Court distinguished "[e]mployer-sponsored pension plans, and group health or life insurance plans, [which] characteristically insure the employee (or his survivor) only" from workers' compensation insurance and likened workers' compensation insurance to other liability insurance because:

> Workers' compensation policies both protect the employer-policyholder from liability in tort, and cover its obligation to pay workers' compensation benefits. When an employer fails to secure workers' compensation coverage, or loses coverage for nonpayment of premiums, an affected employee's remedy would not lie in a suit for premiums that should have been paid to a compensation carrier. Instead, employees who sustain work-related injuries would commonly have recourse to a state-maintained fund. Or, in lieu of the limited benefits obtainable from a state fund under workers' compensation schedules, the injured employee might be authorized to pursue the larger recoveries successful tort litigation ordinarily yields.

*Id.* (citations omitted).

20. Here, unlike the case where the debtor pays an insurance carrier for workers' compensation insurance, the Debtor self-funds its Workers Comp Plan. Consequently, the Workers' Comp Plan is more like an employer-sponsored pension plan that is granted section 507(a)(5) priority. Accordingly, any pre-petition obligation can be paid based on the likely priority status.

21. The Ninth Circuit has recognized the "necessity of payment" doctrine. In *Burchinol v. Central Washington Bank (In re Adam's Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir,

1987), the Ninth Circuit discussed the existence of two competing "fundamental tenets" of bankruptcy: (1) equality in the treatment of all creditors; and (2) the rehabilitation of Debtor. The court stated that the rehabilitation of a debtor "may supersede the policy of equal treatment" of creditors, and went on to describe such situations, specifically mentioning the payment of pre-petition wages and benefits to employees. *Id.* ("Cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts.").[2] Furthermore, the court went on to state that section 364(d), for example, "illustrates a Congressional willingness to subordinate the interests of pre-petition creditors to the goal of rehabilitation." *Id.*

22. Here, the rehabilitation of the Debtor supersedes the policy of equal treatment. California state law requires the Debtor to maintain workers' compensation insurance. Cal. Labor Code § 3700. Since 1979, the Debtor has fulfilled this obligation through its state-certified, self-funded Workers Comp Plan as permitted by California Labor Code section 3700(b). The Debtor's certificate of consent to self-insure ("Certificate") may be revoked if the Debtor is unable to fulfill on its workers' compensation obligations under the Workers Comp Plan. Cal. Labor Code § 3702(a). If the Debtor's Certificate is revoked, the Debtor would be required to obtain workers' compensation insurance in order to continue to operate. *See* Cal. Labor Code § 3700(a). The Debtor has previously sought quotes for workers compensation insurance and it would cost the Debtor double or triple the amount the Debtor currently pays for the Workers Comp Plan if the Debtor was not self-insured. This additional expense could jeopardize the Debtor's reorganization.

23. The maintenance of the Workers Comp Plan is likewise justified because applicable state law mandates this coverage, and 28 U.S.C. § 959(b) requires the Debtor to

---

[2] See also *In re Ionosphere Clubs, Inc.*, *supra*, at 176 ("The policy of equality among creditors… may be of significance in liquidation cases under Chapter 7, however, the paramount policy and goal of Chapter 11, to which all other bankruptcy policies are subordinated, is the rehabilitation of the debtor.")

comply with valid state laws. In addition the Debtor's Employees all depend on the protection provided by the Debtor's self-funded Workers Comp Plan.

24. With respect to the accrued and unpaid Workers Comp Plan obligations, the Debtor requests that, to the extent practicable, the applicable banks be directed to honor checks or fund transfer requests regardless of whether they were issued prior to or after the Petition Date. The Debtor has or will have on deposit sufficient funds in its disbursement account to satisfy all Workers Comp Plan obligations so that the bank will not be prejudiced by an order directing it to honor the Debtor's checks or fund transfer requests with respect to such amounts.

25. Finally, authorization of the payment of the prepetition Workers Comp Plan obligations shall not be deemed to constitute postpetition assumption or adoption of any policy, plan, program, or employee agreement pursuant to section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserving all of its rights under the Bankruptcy Code with respect thereto.

26. The Debtor seeks to avail itself of the protection and flexibility provided by the bankruptcy laws to reorganize and address the financial crisis that has befallen the Debtor. Accordingly, the Debtor seeks authority from this Court's to honor its prepetition obligations under the Workers' Comp Plan to its Employees in order to prevent employee defection and harm to the Debtor's business, to prevent a default under state mandates, and to implement a seamless transition into Chapter 11.

**2.    The Payment of Pre-Petition Workers Comp Plan Obligations is Necessary Under Federal Rule of Bankruptcy Procedure 6003**

27. Pursuant to the recently revised Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court may grant relief regarding a motion to pay all or part of a prepetition claim within 21 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. As described above, the Debtor's Employees are integral to the Debtor's operations. Failure to satisfy obligations with respect to the Employees in the ordinary course of business during the first 21 days of this chapter 11 case will jeopardize their loyalty and trust, causing Employees to leave the Debtor's employ and severely disrupting the Debtor's

Case 12-37961    Filed 10/09/12    Doc 20

comply with valid state laws. In addition the Debtor's Employees all depend on the protection provided by the Debtor's self-funded Workers Comp Plan.

24. With respect to the accrued and unpaid Workers Comp Plan obligations, the Debtor requests that, to the extent practicable, the applicable banks be directed to honor checks or fund transfer requests regardless of whether they were issued prior to or after the Petition Date. The Debtor has or will have on deposit sufficient funds in its disbursement account to satisfy all Workers Comp Plan obligations so that the bank will not be prejudiced by an order directing it to honor the Debtor's checks or fund transfer requests with respect to such amounts.

25. Finally, authorization of the payment of the prepetition Workers Comp Plan obligations shall not be deemed to constitute postpetition assumption or adoption of any policy, plan, program, or employee agreement pursuant to section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserving all of its rights under the Bankruptcy Code with respect thereto.

26. The Debtor seeks to avail itself of the protection and flexibility provided by the bankruptcy laws to reorganize and address the financial crisis that has befallen the Debtor. Accordingly, the Debtor seeks authority from this Court's to honor its prepetition obligations under the Workers' Comp Plan to its Employees in order to prevent employee defection and harm to the Debtor's business, to prevent a default under state mandates, and to implement a seamless transition into Chapter 11.

**2.    The Payment of Pre-Petition Workers Comp Plan Obligations is Necessary Under Federal Rule of Bankruptcy Procedure 6003**

27. Pursuant to the recently revised Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court may grant relief regarding a motion to pay all or part of a prepetition claim within 21 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. As described above, the Debtor's Employees are integral to the Debtor's operations. Failure to satisfy obligations with respect to the Employees in the ordinary course of business during the first 21 days of this chapter 11 case will jeopardize their loyalty and trust, causing Employees to leave the Debtor's employ and severely disrupting the Debtor's

operations at this critical juncture, as well as affecting the Debtor's going concern value. Moreover, the Employees rely on the Workers Comp Plan and the effect could be financially ruinous if the Debtor cannot pay pre-petition obligations under the Workers Comp Plan in the ordinary course of business. Accordingly, the Debtor submits that it has satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of its obligations under the Workers Comp Plan.

## **NOTICE**

28. No trustee, examiner or creditors' committee has been appointed in this chapter 11 case. Notice of this Motion has been provided by e-mail, fax or overnight courier to the following parties in interest: (a) the Office of the United States Trustee, (b) the twenty (20) largest unsecured creditors of the Debtor (as identified in the lists filed pursuant to Bankruptcy Rule 1007(d), (c) secured creditors, and (d) all owners of the Debtor. As this Motion is seeking first day relief, notice of this Motion and any order entered hereon will be served as required by Rule 9014-1(f)(4) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of California. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtor respectfully submits that no further notice of this Motion is required.

## **CONCLUSION**

WHEREFORE, based upon the foregoing, the Debtor respectfully request entry of an order as follows:

1. Authorizing, but not directing, the Debtor to maintain and continue the Workers Comp Plan, including the payment of claims of injured employees in accordance therewith (with such payments not to exceed $4,527,562 in the aggregate) and other amounts necessary to maintain the Workers Comp Plan;

2. Authorizing the Debtor to continue using its pre-petition Workers Comp Plan bank account at Wells Fargo Bank, N.A. for the purpose of administering the Workers' Comp Plan;

3. Authorizing and directing the bank at which the Debtor maintains an account from which the Debtor's Workers Comp Plan obligations are disbursed and all other banks or lending

institutions maintaining Workers Comp Plan accounts to honor and pay all pre-petition and post-petition checks issued or to be issued and fund transfers requested or to be requested, by the Debtor in respect of the Workers Comp Plan obligations;

4. Authorizing the Debtor to issue new post-petition checks or fund transfer requests with respect to pre-petition obligations that may have been dishonored by the banks in respect of the Workers Comp Plan obligations, if necessary; and

5. For such other and further relief as the Court deems just.

Dated: October 9, 2012

                      FELDERSTEIN FITZGERALD
                      WILLOUGHBY & PASCUZZI LLP

By: */s/ Thomas A. Willoughby*
     Thomas A. Willoughby
     Proposed Attorneys for Zacky Farms, LLC,
     Debtor and Debtor in Possession