DONALD W. FITZGERALD, State Bar No. 095348
THOMAS A WILLOUGHBY, State Bar No. 137597
JENNIFER E. NIEMANN, State Bar No. 142151
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
dfitzgerald@ffwplaw.com
twilloughby@ffwplaw.com
jniemann@ffwplaw.com

Proposed Attorneys for Zacky Farms, LLC

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>ZACKY FARMS, LLC, a<br>California limited liability Debtor,<br><br>Debtor-In-Possession. | CASE NO. 12-37961-B-11<br><br>DCN: FWP-4<br><br>Date: October 11, 2012<br>Time: 1:30 p.m.<br>Courtroom: 32<br>501 I Street, 6th Floor<br>Sacramento, CA |

**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO (1) RETAIN ITS CURRENT CASH MANAGEMENT SYSTEM AND (2) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS**

Zacky Farms, LLC, a California limited liability company, debtor in possession in the above-titled bankruptcy case ("Zacky Farms" or the "Debtor"), hereby files this Emergency Motion for Authority to (1) Retain Its Current Cash Management System and (2) Maintain Existing Bank Accounts and Business Forms (the "Motion"), and respectfully represents:

**JURISDICTION**

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 9014-1(f)(4). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are 11 U.S.C. §§ 105(a) and 345(b).

**REQUEST FOR RELIEF**

2. By this Motion, the Debtor seeks, *inter alia*, entry of an order (a) waiving the U.S. Trustee Guidelines to the extent necessary in order to continue its use of its existing cash management system as modified to accommodate the DIP facility, (b) authorizing the Debtor to continue using its prepetition bank accounts and business forms, including a waiver of the requirement that the legend "debtor in possession" be imprinted on any existing checks and business forms, and (c) authorizing the Debtor to continue the use of its existing cash management system as modified to accommodate the DIP facility. The Debtor also seeks to continue its investment policies during its bankruptcy case, without posting any bonds pursuant to section 345(b) of the Bankruptcy Code. The Debtor seeks this authorization to insure its orderly entry into bankruptcy and to help efficiently administer its business and avoid the disruptions and distractions that would inevitably divert the Debtor's attention from urgent matters during the initial stages of its bankruptcy case.

3. In support of this Motion, the Debtor relies upon the Declaration of Keith F. Cooper filed on October 9, 2012 (Dkt. No. 5) ("Cooper Decl."), along with all exhibits filed in support of that Declaration. In further support of this Motion, Debtor relies upon the following points and authorities:

**FACTUAL BACKGROUND**

4. On October 8, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is authorized to operate its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. Cooper Decl. ¶ 8.

5. The Debtor is currently engaged in the production, marketing, and distribution of a variety of fresh and frozen poultry products. The Company's operations include the breeding, hatching, and growing of turkeys and chickens as well as processing and marketing of poultry products. *Id.* ¶ 9.

6. Prior to the commencement of this chapter 11 case, the Debtor maintained a cash management system ("Cash Management System") in the operation of its business.

1 Specifically, the Debtor maintained nine bank accounts at three different banks. The Debtor's primary cash management bank is Wells Fargo. The Debtor maintains seven accounts at Wells Fargo through which substantially all of the Debtor's collections are deposited and disbursements made. The Cash Management System operates as follows:

    a. The Debtor collects receipts primarily through: (1) wire transfers; (2) checks received at a lockbox processed by Wells Fargo; (3) checks received at a P.O. Box in Fresno; and (4) checks otherwise received by the Debtor. The Debtor's incoming receipts are all deposited into a general account at Wells Fargo ("General Account").

    b. The General Account funds five disbursement accounts: (i) a controlled disbursement account for accounts payable ("Controlled Disbursements Account"); (ii) a payroll account for hourly employees ("Hourly Payroll Account"); (iii) a payroll account for salaried employees ("Salary Payroll Account"); (iv) a clearing account for the Flexible Savings Account plans ("FSA Account"); and (v) a clearing account for non-recurring activity ("Special Account") (collectively, the "Disbursement Accounts"). The Disbursement Accounts are each zero balance accounts. As funds are needed for presentments to the Disbursement Accounts, money is automatically drawn from the General Account. The Disbursement Accounts are cleared out daily to maintain a zero balance.

    c. In addition to the General Account and the Disbursement Accounts, the Debtor maintains three checking accounts to fund the Health Plan claims ("Health Plan Account"), the Workers Comp Plan claims ("Workers Comp Account"), and the payroll for other Employees ("Other Payroll Account"). The Health Plan Account is maintained at Bank of the West. The Workers Comp Account is maintained at Wells Fargo. The Other Payroll Account is maintained at Bank of America. As needed, the Debtor initiates the transfer of funds from the Operating Master Account to the Health Plan Account, the Workers Comp Account and the Other Payroll Account to cover expected presentments. *Id*. ¶ 141.

7. The proposed debtor in possession financing facility ("DIP Facility") is structured so that all collections of cash collateral that is collateral for the Original Credit Facility must be used to pay down the obligations owed under the Original Credit Facility only.

Consequently, the Cash Management System needs to be altered to provide that the Debtor's incoming receipts post-petition are deposited into a new account and not the General Account. To facilitate this modification, the Debtor will open a new collections account ("Collections Account") into which all of the Debtor's post-petition receipts will be deposited. These receipts constitute collections of cash collateral for the Original Credit Facility at least through year end. The funds in the Collections Account will be swept into another account held by the DIP lender ("DIP Lender Account"). Funds from the DIP Lender Account will then be used to fund the DIP Facility. Funds from the DIP Facility will be deposited into the General Account and the General Account will be used to pay post-petition obligations (and any court approved prepetition obligations) through the Disbursement Accounts, the Health Plan Account, the Workers Comp Account and the Other Payroll Account. The General Account, Disbursement Accounts, Health Plan Account, Workers Comp Account, and Other Payroll Account are collectively referred to as the "Bank Accounts." *Id*. ¶ 142.

8. Given the size and complexity of the Debtor's operations, authorizing the Debtor to continue to use its existing bank accounts and Cash Management System as modified to accommodate the DIP Facility is essential to a smooth and orderly transition of the Debtor into chapter 11 and to avoid disruption of its business. New accounts would inevitably lead to delays, confusion, and disruption of payments to employees and suppliers that would likely adversely affect employee morale and vendor confidence at this critical juncture. *Id*. ¶ 143.

9. Moreover, a transition to new debtor-in-possession bank accounts at this time would be disruptive and time-consuming. By permitting the DIP Facility to incorporate the Debtor's existing accounts and allowing those accounts to remain open, preserving business continuity, and avoiding the operational and administrative paralysis that closing the accounts and opening new ones would necessarily entail, all parties-in-interest, including the Employees, will be best served, and the Debtor's estate will benefit considerably. *Id*. ¶ 144.

10. Finally, by virtue of the nature and scope of the Debtor's business, the number of accounts, and numerous Employees, suppliers of goods and services, and others with whom the Debtor transacts business, it is imperative that the Debtor be permitted to continue to use its

existing business forms, including checks. A substantial amount of time and expense would be required to print new business forms and stationery and would also likely result in a substantial risk of disruption to the Debtor's ordinary business affairs. *Id*. ¶ 145.

11. The Debtor's practices generally conform with the intent of section 345(b) to protect and maximize the value of its estate. The Debtor' existing investment procedures are designed to protect the principal invested while maximizing liquidity and, therefore, sufficient cause exists to waive the investment requirements of section 345(b) to allow the Debtor to continue its existing investment procedures. *Id*. ¶ 146.

12. Moreover, the deposits at issue are safe because of the relative strength of the banks in which the Debtor's deposits are maintained. The banks the Debtor uses are well-established and invest the Debtor's funds in accordance with their standard investment guidelines. Requiring the Debtor to open multiple accounts at different banks so that the deposits in each such bank would be insured by FDIC would be unnecessarily burdensome and would lead to the same delays and disruption to the Debtor's business that this Motion seeks to avoid. *Id*. ¶ 147.

## LEGAL ANALYSIS

**A.  Maintaining the Debtor's Current Bank Accounts is in the Best Interests of the Estate and is Authorized Pursuant to 11 U.S.C. § 105(a)**

13. The United States Trustee for the Eastern District of California has established certain operating guidelines for debtors in possession. One such provision requires a chapter 11 debtor in possession ("DIP") to open new DIP bank accounts and to close all existing accounts. The United States Trustee guidelines also require that new bank accounts be opened in certain financial institutions designated as authorized depositories by the United States Trustee. *See* UST Guidelines 4.4.6(a) & (b). In addition, Rule 2015-2(a) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of California (the "Local Bankruptcy Rules") also require the chapter 11 debtor to close all existing bank accounts and open new accounts in a federally insured depository.

Case 12-37961    Filed 10/09/12    Doc 21

14. Pursuant to section 105(a) of the Bankruptcy Code, the Debtor seeks a waiver of the United States Trustee requirements and Local Bankruptcy Rule relating to the closing and re-opening of new bank accounts. Such a requirement would unnecessarily disrupt the Debtor's business, impair its efforts to maximize the going concern value of its assets and would not provide any significant benefit to the Debtor's estate, its creditors or parties in interest. For example, the Debtor's employees would suffer significant hardship if the Debtor were required to substitute new debtor-in-possession payroll accounts for the existing payroll accounts and would face attendant delays, confusion and disruption that would necessarily result. It is critical to the continued operation of the Debtor's business and preservation of the going concern value of its assets that the existing cash management system and Bank Accounts continue to be utilized without disruption.

15. In addition, the filing of the Debtor's bankruptcy petition will undoubtedly be publicized and place a strain on the Debtor's relationship with its customers, vendors and other creditors that are essential to the Debtor's continued operations. If the Debtor is required to substitute new debtor-in-possession bank accounts for its existing Bank Accounts, these relationships will be further strained by the payment delays and confusion that would result from opening the new accounts. Moreover, the terms of the Debtor's proposed DIP Loan Facility is structured to incorporate the Debtor's current Bank Account system. Consequently, the Debtor believes that it is imperative that it be permitted to continue using the existing Bank Accounts to avoid such unnecessary disruption of its business, efficiently administer its bankruptcy case and devote its efforts to a successful reorganization.

16. Section 105(a) of the Bankruptcy Code grants courts broad authority to carry out and enforce the provisions of Title 11 using equitable doctrines. That section provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

///

EMERGENCY MOTION TO RETAIN CASH
MANAGEMENT SYSTEM AND BANK ACCOUNTS

17. The Debtor asserts that authorizing the continued use of its existing Bank Accounts is an appropriate exercise of the Court's discretion, as such authorization would allow the Debtor to avoid unnecessary costs and significant disruptions and delays affecting its business, its employees, and its creditors, and would allow the Debtor to focus its efforts on reorganization.

18. In other large cases, bankruptcy courts in various California Districts have waived the strict enforcement of bank account closing requirements and replaced them with alternative procedures. *See In re Barbeques Galore, Inc.*, Case No. 08-16036 (Bankr. C.D. Cal. Aug. 20, 2008); *In re eStyle, Inc.*, Case No. 08-13518 (Bankr. C.D. Cal. March 27, 2008); *In re Heller Ehrman*, Case No. 08-32514 (Bankr. N.D. Cal. Dec. 30, 2008); *In re Arriva Pharmaceuticals, Inc.*, Case No. 07-42767 (Bankr. N.D. Cal. Sept. 11, 2007); *In re Consolidated Freightways Corp. of Delaware*, Case No. 02-24284 (Bankr. C.D. Cal. October 3, 2002).

19. In addition, bankruptcy courts in other districts, including but not limited to the District of Delaware and the Southern District of New York, routinely grant motions similar to this Motion for larger bankruptcy cases. *See In re Gottschalks Inc.*, 09-10157 (Bankr. D. Del. Jan. 15, 2009); *In re Special Devices, Inc.*, Case No. 08-13312 (Bankr. D. Del. Jan. 6, 2009); *In re Wickes Holdings, LLC*, Case No. 08-10212 (Bankr. D. Del. Feb. 5, 2008); *In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (Bankr. S.D.N.Y. May 2, 2008); *In re PLVTZ, Inc.*, Case No. 07-13532 (Bankr. S.D.N.Y. Nov. 9, 2007).

**B.   Maintaining the Debtor's Existing Business Forms is in the Best Interests of the Estate**

20. The Debtor also requests authority to continue to use all existing correspondence and business forms (including, but not limited to letterhead, purchase orders, invoices, etc.), as well as checks, without reference to its "debtor in possession" status, in order to minimize expenses to the estate.

21. In the ordinary course of its business, the Debtor uses many pre-printed correspondence and business forms. The nature and scope of the Debtor's business and the numerous suppliers of goods and services require that the Debtor be permitted to continue using

its existing pre-printed correspondence and business forms without alteration or modification. Changing correspondence and business forms would be unnecessary and burdensome to the estate, as well as expensive and disruptive to the Debtor's business operations. Parties doing business with the Debtor undoubtedly will be aware, as a result of the size of this case and the integrated nature of the industry in which the Debtor operates, of the Debtor's status as debtors due to the number of accounts that the Debtor maintains. Accordingly, the Debtor also requests authority to use its correspondence and business forms without placing the label "debtor in possession" on each such correspondence or form.

22.    In other large cases, bankruptcy courts in various California Districts have allowed debtors to use their prepetition business forms. *In re eStyle, Inc.*, Case No. 08-13518 (Bankr. C.D. Cal. March 27, 2008 order); *In re Heller Ehrman*, Case No. 08-32514 (Bankr. N.D. Cal. Dec. 30, 2008 order); *In re Consolidated Freightways Corp. of Delaware*, Case No. 02-24284 (Bankr. C.D. Cal. October 3, 2002 order).

**C.    Maintenance of the Debtor's Existing Cash Management System is in the Best Interests of the Estate**

23.    The Cash Management System described above in the Factual Background constitutes the Debtor's ordinary, usual and essential business practice. The Cash Management System is similar to those commonly employed by corporate enterprises comparable to the Debtor in size and complexity. The widespread use of such systems is attributable to the numerous benefits they provide, including the ability to: (a) tightly control corporate funds; (2) insure cash availability; and (c) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance and presentment information. These controls are particularly important here given the significant amount of cash that flows through the Debtor's Cash Management System on an annual basis.

24.    In addition, given the financial structure of the Debtor, it would be difficult, if not impossible, for the Debtor to establish an entirely new system of accounts and a new cash management system. Thus, under the circumstances, maintenance of the Debtor's Cash Management System is not only essential to the Debtor; it also is in the best interests of its estate

and creditors.

25.    If the Debtor is not permitted to continue to use its Cash Management System in its current form modified to the extent necessary by the proposed DIP Loan Facility, its operations will be severely and perhaps irreparably impaired.  Accordingly, the Court should authorize the Debtor's continued use of its existing Cash Management System.

26.    In other large bankruptcy cases, bankruptcy courts in various California Districts have allowed debtors to continue to use their existing cash management systems. *In re eStyle, Inc.*, Case No. 08-13518 (Bankr. C.D. Cal. March 27, 2008 order); *In re Heller Ehrman*, Case No. 08-32514 (Bankr. N.D. Cal. Dec. 30, 2008 order); *In re Arriva Pharmaceuticals, Inc.*, Case No. 07-42767 (Bankr. N.D. Cal. Sept. 11, 2007 order); *In re Consolidated Freightways Corp. of Delaware*, Case No. 02-24284 (Bankr. C.D. Cal. October 3, 2002 order).

27.    In addition, bankruptcy courts in other districts, including but not limited to the District of Delaware and the Southern District of New York, routinely grant motions similar to this Motion for larger bankruptcy cases.  See *In re Special Devices, Inc.*, Case No. 08-13312 (Bankr. D. Del. Jan. 6, 2009); *In re Wickes Holdings, LLC*, Case No. 08-10212 (Bankr. D. Del. Feb. 5, 2008); *In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (Bankr. S.D.N.Y. May 2, 2008); *In re PLVTZ, Inc.*, Case No. 07-13532 (Bankr. S.D.N.Y. Nov. 9, 2007).

28.    It is critical both to the continued operation of the Debtor's business and to the preservation of the value of that business that the Debtor continue to utilize its existing Cash Management System without disruption.  Accordingly, it is appropriate and entirely consistent with applicable provisions of the Bankruptcy Code and case law for the Court to approve the Debtor's Cash Management System in its current form.

**D.    Continued Use of Investment Practices**

29.    The Debtor also seeks a waiver of the deposit guidelines set forth in section 345(b) to the extent necessary to allow the Debtor to maintain its Bank Accounts.

30.    Section 345 of the Bankruptcy Code authorizes a debtor to invest cash and money in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  Section 345(b) of the

Bankruptcy Code provides as follows:

> Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such motion is deposited or invested –
>
> (1) a bond –
>
> (A) in favor of the United States;
>
> (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>
> (C) conditioned on –
>
> (i) a proper accounting for all money so deposited or invested and for any return on such money;
>
> (ii) prompt repayment of such money and return; and
>
> (iii) faithful performance of duties as a depository; or
>
> (2) the deposit of securities of the kind specified in section 9303 of title 31;
>
> unless the court for cause orders otherwise.

11 U.S.C. § 345(b).

31. Section 345 expressly provides that the Court may modify a debtor's investment requirements for "cause." The Debtor submits that cause exists for allowing it to invest its excess cash in accordance with their existing investment policies, without meeting the strict bond requirements of section 345(b).

32. The Debtor submits that its practices generally conform to the intent of section 345(b) to protect and maximize the value for its estate. The Debtor believes that its existing investment procedures are designed to protect the principal invested while maximizing liquidity and, therefore, believes that sufficient cause exists to waive the investment requirements of section 345(b) to allow the Debtor to continue its existing investment procedures.

33. Courts have routinely granted requests to approve the continued use of deposit guidelines that do not comply strictly with section 345. This is especially the case when, as here, the manner of the proposed investments if safe and prudent. *See, e.g., In re Service*

*Merchandise, Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (enumerating factors to be considered in waiving requirements of section 345, including size of business and safety of debtor's proposed investments).

34.    Moreover, the Debtor believes that the banks the Debtor uses are well-established and invest the Debtor's funds in accordance with their standard investment guidelines. Requiring the Debtor to open multiple accounts at different banks so that the deposits in each such bank would be insured by FDIC would be unnecessarily burdensome and would lead to the same delays and disruption of the Debtor's business that this Motion seeks to avoid.

35.    The Debtor submits that given the totality of the circumstances, its request is reasonable and cause exists for the Court to relieve the Debtor from compliance with the requirements of section 345(b).  Relief similar to that requested herein has been granted by courts in other substantially similar chapter 11 cases.  *See, e.g., In re TitleMax holdings, LLC*, Case No. 09-40805 (Bankr. S.D. Ga. Apr. 23, 2009) (Davis, J.) [Docket no. 30]; *In re Foamex, Int'l, Inc.*, Case No. 05-12685 (Bankr. D. Del. Sept. 21, 2005) (Walsh, J.) [Docket No. 39]; *In re Meridian Auto. Systems-composites Ops., Inc.*, Case No. 05-11168 (Bankr. D. Del. Apr. 27, 2005) (Walrath, J.) [Docket No. 27].

36.    For the foregoing reasons, the Debtor believes that granting the relief requested herein is appropriate and in the best interest of its estate.

37.    To the extent the fourteen day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Motion, the Debtor requests that such stay be waived.

## **NOTICE**

38.    No trustee, examiner or creditors' committee has been appointed in this chapter 11 case.  Notice of this Motion has been provided by e-mail, fax or overnight courier to the following parties in interest:  (a) the Office of the United States Trustee, (b) the twenty (20) largest unsecured creditors of the Debtors (as identified in the list filed pursuant to Bankruptcy Rule 1007(d), (c) secured creditors, and (d) all owners of the Debtor.  As this Motion is seeking first day relief, notice of this Motion and any order entered hereon will be served as required by Rule 9014-1(f)(4) of the Local Bankruptcy Rules.  Due to the urgency of the circumstances

surrounding this Motion and the nature of the relief requested herein, the Debtor respectfully submits that no further notice of this Motion is required.

## **CONCLUSION**

WHEREFORE, based upon the foregoing, the Debtor respectfully requests entry of an order as follows:

1. Waiving the U.S. Trustee Guidelines to the extent necessary in order to continue its use of its existing Cash Management System;

2. Authorizing the Debtor to continue using its prepetition bank accounts and business forms, including a waiver of the requirement that the legend "debtor in possession" be imprinted on any existing checks and business forms;

3. Authorizing the Debtor to continue the use of its existing Cash Management System;

4. Authorizing the Debtor to continue its current investment practices as described in the Motion and relieving the Debtor from the requirement to obtain a bond from the Banks pursuant to section 345(b) of the Bankruptcy Code; and

5. For such other and further relief as the Court deems just.

Dated: October 9, 2012

FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP

By: */s/ Thomas A. Willoughby*
THOMAS A. WILLOUGHBY
Proposed Attorneys for Zacky Farms, LLC,
Debtor and Debtor in Possession