DONALD W. FITZGERALD, State Bar No. 095348
THOMAS A WILLOUGHBY, State Bar No. 137597
JENNIFER E. NIEMANN, State Bar No. 142151
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
dfitzgerald@ffwplaw.com
twilloughby@ffwplaw.com
jniemann@ffwplaw.com

Proposed Attorneys for Zacky Farms, LLC

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>ZACKY FARMS, LLC, a California limited liability company,<br><br>      Debtor-In-Possession. | CASE NO. 12-37961<br><br>DCN: FWP-1<br><br>Date: November 8, 2012<br>Time: 3:00 p.m.<br>Courtroom: 32<br>501 I Street, 6th Floor<br>Sacramento, CA |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§105, 361, 362, 363, 364, AND 507 (I) AUTHORIZING DEBTOR (A) TO OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL; (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES AND (IV) MODIFYING AUTOMATIC STAY**

Upon the motion (the "Motion"),[1] filed October 10, 2012, of Zacky Farms, LLC ("Zacky Farms" or the "Debtor"), as debtor and debtor in possession, in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to sections 105(a), 361, 362, 363, 364, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1 and 4001-1 of the Local Bankruptcy Rules for the Eastern District of California (the

---

[1] Capitalized terms used, but otherwise undefined herein shall have the meaning ascribed to them in the Motion.

RECEIVED
November 09, 2012
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0004526694

"Local Rules"), for a final order (the "Final Order") seeking, among other things:

(a)    authorization for Zacky Farms to obtain post-petition financing (the "DIP Financing") in an aggregate principal amount of up to $71,000,000 upon entry of this Final Order (subject to the terms and conditions set forth in the DIP Documents (as defined below)) from the Robert D. Zacky and Lillian D. Zacky Trust U/D/T dated July 26, 1988 (the "Robert D. and Lillian D. Zacky Trust" and, in the capacity as lender under the DIP Financing, the "DIP Lender") under to the DIP Credit Agreement (as defined below);

(b)    authorization for the Debtor to enter into the DIP Documents (as defined below) and to perform such other and further acts as may be required in connection with the DIP Documents;

(c)    the granting of adequate protection to the Prepetition Secured Lender (as defined below) whose liens under or in connection with the following instruments (collectively, the "Prepetition Loan Documents") are being primed solely by the DIP Liens (as defined below) and the Adequate Protection Liens (as defined below), each subject to the Carve-Out (as defined below):

i.    the Credit Agreement, dated as of October 13, 2009 (as amended, restated, supplemented or otherwise modified from time to time, the "Original Credit Facility"), among Zacky Farms, as borrower, and the Robert D. and Lillian D. Zacky Trust (successor by assignment to Wells Fargo Bank, N.A.) (the Robert D. and Lillian D. Zacky Trust, under the Prepetition Loan Documents, the "Prepetition Secured Lender") and the Line of Credit Note dated as of October 13, 2009, by and between, among others, the Borrower and the Prepetition Secured Lender, as lender, as amended, pursuant to which Zacky Farms incurred indebtedness to the Prepetition Secured Lender (the "Prepetition Debt");

ii.    the Second Amended and Restated Continuing Security Agreement: Rights to Payment and Inventory and the Second Amended and Restated Security Agreement: Equipment (each as defined in the Original Credit Facility) made by and among Zacky Farms and the Robert D. and Lillian D. Zacky Trust (successor by assignment to Wells Fargo Bank, N.A.); and

iii.     any and all other security agreements, instruments and other documents entered into in connection with the Original Credit Facility;

(d)     authorization for the Debtor to grant the DIP Liens (as defined below);

(e)     authorization for the Debtor to use Cash Collateral (as defined below), subject to the terms and conditions of this Final Order, and the granting of certain adequate protection to the Prepetition Secured Lender against the diminution in the value of the Prepetition Collateral (as defined below), on account of the use, sale or lease of the Prepetition Collateral, or the imposition of the automatic stay pursuant to Bankruptcy Code section 362;

(f)     approval, pursuant to Bankruptcy Code sections 105, 361, 362, 363 and 507, of the form and manner of adequate protection being granted to the Prepetition Secured Lender, who has been granted prepetition liens and security interests under the Prepetition Loan Documents;

(g)     this Court's modification of the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms of this Final Order;

(h)     this Court's scheduling, pursuant to Bankruptcy Rules 4001(a), (b) and (d), a hearing (the "Final Hearing") to consider entry of the Final Order, which, among other things, shall authorize the Debtor to obtain DIP Financing and use the Cash Collateral and grant adequate protection to the Prepetition Secured Lender; and

(i)     This Court's finding, pursuant to Bankruptcy Rules 2002 and 4001(b)(1) and Local Rules 4001-1 and 2002-1, that notice of the Final Hearing is sufficient having been given to (i) the Office of the United States Trustee for the Eastern District of California (the "U.S. Trustee"), (ii) each secured creditor of record and to the extent known to the Debtor, its counsel, (iii) the Prepetition Secured Lender, (iv) the twenty (20) largest unsecured creditors of the Debtor, (v) any known party asserting a lien against, or other interests in, any of the Debtor's assets, and (vi) the Internal Revenue Service, the State of California Attorney General, the United States Attorney, the Food and Drug Administration, the Department of Agriculture, Environmental Protection Agency, the Occupational Safety and Health Administration, corresponding state

agencies, as well as other governmental agencies, to the extent required by the Bankruptcy Rules and the Local Rules (collectively, the "Notice Parties"); and such notice being sufficient and adequate, and no other or further notice being required.

(j)      The Interim Hearings having been held on October 11, 2012 and October 24, 2012, respectively (the "Interim Hearings") and the Final Hearing having been held on November 1, 2012, November 6, 2012, November 7, 2012 and November 8, 2012; and based upon all of the pleadings filed with this Court, the evidence presented at the Interim Hearing and the Final Hearing and the entire record herein; and this Court having heard and resolved or overruled all objections to the relief requested in the Motion; and this Court having noted the appearances of all parties in interest; and the Court having entered on October 11, 2012 its *Interim Order Pursuant to 11 U.S.C. §§105, 361, 362, 363, 364, and 507 (I) Authorizing Debtor (A) To Obtain Senior Secured Superpriority Postpetition Financing and (B) Utilize Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Status; (III) Granting Adequate Protection to Prepetition Secured Parties; (IV) Modifying Automatic Stay; and (V) Scheduling Interim and Final Hearings* [Docket No. 45]; and this Court having entered on October 24, 2012 its *Second Interim Order* [Docket No. 112]; this Court having entered on November 5, 2012 its *Third Interim Order* [Docket No. 209]; and this Court having entered on November 7, 2012 its *Fourth Interim Order* [Docket No. 238] (collectively, the "Interim Orders"); and it appearing that the relief requested in the Motion, as modified herein, is necessary to avoid irreparable harm to the Debtor's estate, and otherwise is fair and reasonable, and in the best interests of the Debtor, its estate, and its creditors; and after due deliberation and consideration, and sufficient cause appearing therefor:

**IT IS HEREBY FOUND (FINDINGS OF FACT AND CONCLUSIONS OF LAW):[2]**

A.      **Disposition.**  The Motion is granted on a final basis in accordance with the terms of this Final Order.  Any objections to the Motion with respect to the entry of the Final Order that

---

[2]  This Final Order constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014.  Any and all findings of fact shall constitute findings of fact even if stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if stated as findings of fact.

have not been withdrawn, waived or settled, and all reservation of rights included therein, are hereby denied and overruled.

**B.**    <u>Petition Date.</u>  On October 8, 2012 (the "<u>Petition Date</u>"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in the Chapter 11 Case.

**C.**    <u>Jurisdiction; Venue.</u>  This Court has jurisdiction over the Chapter 11 Case, the parties, and the Debtor's property pursuant to 28 U.S.C. §§157(b)(2)(D) and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D).  Venue for the Chapter 11 Case and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

**D.**    <u>Statutory Committee.</u>  On October 16, 2012, the U.S. Trustee appointed the official committee of unsecured creditors pursuant to Bankruptcy Code section 1102 (the "<u>Committee</u>").

**E.**    <u>Interim Order.</u>  Based upon the Motion, the DIP Documents and the evidence submitted or proffered at the Interim Hearings, the Court approved the Debtor's entry into and performance under the DIP Credit Agreement and the other DIP Documents and entered the Interim Orders.  Pursuant to the Interim Orders, the Debtors were authorized, among other things, to incur secured borrowings pursuant to the terms of the DIP Documents and the Interim Orders pending the entry of a final order on the Motion.

**F.**    <u>Prepetition Liens.</u>  To secure the Prepetition Loan Obligations under the Original Credit Facility and the other Prepetition Loan Documents, Zacky Farms granted the Prepetition Secured Lender security interests and valid first priority liens (the "<u>Prepetition Liens</u>") upon and in all of Zacky Farms' accounts receivable, inventory, and equipment, and all proceeds thereof and accessions thereto (the "<u>Prepetition Collateral</u>").

**G.**    <u>Debtor's Stipulations.</u>    Subject to paragraph 25 of this Final Order, after consultation with its legal, financial and other professional advisors, the Debtor acknowledges, admits, represents, stipulates, and agrees that:

(1)    As of the Petition Date, Zacky Farms was liable to the Prepetition Secured Lender in respect of obligations under the Prepetition Loan Documents for the aggregate principal amount of not less than $56,652,663.45 (the "Prepetition Loan Obligations").

(2)    As of the Petition Date, all of the Prepetition Loan Obligations are unconditionally due and owing by Zacky Farms to the Prepetition Secured Lender.

(3)    As of the Petition Date, all claims in respect of the Prepetition Loan Obligations  (i) constitute legal, valid, binding and non-avoidable obligations of the Debtor and (ii) are not, and shall not be, subject to any avoidance, disallowance, disgorgement, reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense or any other challenge of any kind or nature under the Bankruptcy Code or any other applicable law or regulation, by the Debtor, the Committee or any other person, party or entity.

(4)    The Prepetition Liens (i) constitute valid, binding, enforceable, non-avoidable, and properly perfected liens on the Prepetition Collateral that, prior to the entry of the Interim Orders, were senior in priority over any and all other liens on the Prepetition Collateral, subject only to those liens explicitly permitted by the Prepetition Loan Documents and (ii) are not, and shall not be, subject to avoidance, reduction, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense or any other challenge under the Bankruptcy Code or any other applicable law or regulation by the Debtor, the Committee or by any other person, party, or entity.

(5)    The Prepetition Secured Lender is not and shall not be deemed to be a control person or insider of the Debtor solely by virtue of any of the actions taken in respect of or in connection with the Prepetition Loan Obligations or the Prepetition Loan Documents.

(6)    As of the Petition Date, the Debtor has not brought, is not aware of, and does not have any Potential Claims and Defenses (as defined below).

(7)    As of the Petition Date, the aggregate value of the Prepetition Collateral exceeds the aggregate amount of the Prepetition Loan Obligations.

(8)    As of the Petition Date, there were no other perfected liens on or security

interests in the Prepetition Collateral, except for the Prepetition Liens.

**H.    Findings Regarding the DIP Financing.**

(1)    The Debtor has an immediate need to obtain the DIP Financing and use Cash Collateral to permit, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operational needs, and to fund the costs of the Chapter 11 Case.  The access of the Debtor to sufficient working capital and liquidity is vital to the preservation and maintenance of the going concern value of the Debtor.

(2)    The Debtor has used diligent efforts to seek, but has been unable to obtain, financing on more favorable terms from sources other than the DIP Lender under the DIP Documents and has been unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor also has been unable to obtain credit under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code on terms more favorable to the Debtor than the DIP Financing.  The Debtor has not been able to find any lender who was willing to make loans on terms more favorable to the Debtor than the DIP Financing on a first lien basis under section 364(d) of the Bankruptcy Code, priming the Prepetition Liens.

(3)    The DIP Lender is willing to provide DIP Financing but only if (i) the Debtor grants to the DIP Lender, subject to the Carve-Out as provided for herein, the DIP Liens and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Final Order and in the DIP Documents, and the other rights and benefits provided to it by the Interim Orders, this Final Order and the DIP Documents and (ii) the Prepetition Secured Lender consents to the priming of the Prepetition Liens.

(4)    The terms of the DIP Financing and the use of Cash Collateral are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

(5)    The DIP Financing has been negotiated in good faith and at arm's length

among the Debtor and the DIP Lender, and all of the Debtor's obligations and indebtedness arising under, in respect of or in connection with the DIP Financing and the DIP Documents, including all loans made to the Debtor and any other obligations under the DIP Documents (collectively, the "<u>DIP Obligations</u>"), shall be deemed to have been extended by the DIP Lender and its affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

      **I.**      <u>**Application of Proceeds of Collateral.**</u>

        (1)      Subject to Paragraph 25 of this Final Order, all proceeds of the sale or other disposition of the Prepetition Collateral (as defined below) shall be applied: (a) first, to reduce the Prepetition Loan Obligations as provided for by the Budget (as defined in the DIP Credit Agreement as revised and attached hereto as Exhibit A), and (b) second, to reduce the DIP Obligations as provided for by the Budget.

      **J.**      <u>**Findings Regarding Cash Collateral.**</u>

        (1)      For purposes of the Interim Orders and this Final Order, the term "<u>Cash Collateral</u>" shall mean and include all "cash collateral," as defined in Bankruptcy Code section 363, in which the Prepetition Secured Lender has a lien, security interest or other interest (including any adequate protection liens or security interests), in each case whether existing on the Petition Date, arising pursuant to the Interim Orders, this Final Order or otherwise.  The Debtor represents and stipulates that all of the Debtor's cash, cash equivalents, negotiable instruments, documents of title, deposit accounts, investment property and securities, including the cash, cash equivalents, negotiable instruments, investment property and securities in its deposit accounts, including the proceeds, products, offspring, rents, or profits of property on account of the Prepetition Collateral, wherever any of the foregoing is located, constitutes the Cash Collateral.

        (2)      <u>Use of Cash Collateral</u>.  The Debtor has an immediate and critical need to use the Cash Collateral to operate its business and effectuate a reorganization of its business,

which Cash Collateral will be used strictly in accordance with the terms of the Interim Orders or the Final Order. Without the use of Cash Collateral, the Debtor will not have sufficient liquidity to be able to continue to operate its business. The adequate protection provided herein and other benefits and privileges contained herein, including those inuring to the benefit of the DIP Lender, are consistent with and authorized by the Bankruptcy Code and are required by the DIP Lender as part of the DIP Financing and are necessary to obtain the consent of the Prepetition Secured Lender and to adequately protect its interests in the Prepetition Collateral.

(3)    Sections 506(c) and 552(b). In light of the Prepetition Secured Lender's agreement to subordinate its liens and claims to the DIP Liens and the Carve-Out, to permit the use of the Prepetition Collateral and to permit the use of its Cash Collateral for payments made strictly in accordance with the terms of the Interim Orders, this Final Order and the DIP Documents, the Prepetition Secured Lender is entitled to (i) a waiver of any "equities of the case" claims under Bankruptcy Code section 552(b) and (ii) a waiver of the provisions of Bankruptcy Code section 506(c).

(4)    Consent to Use of Cash Collateral. The Prepetition Secured Lender has consented to the Debtor's use of Cash Collateral solely on the terms and conditions set forth in the Interim Orders, this Final Order and the DIP Documents.

**K.    Immediate Entry of Final Order.** The Debtor has requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2). The Motion and this Final Order comply with Local Rule 4001-1. The permission granted herein to obtain the DIP Financing and use Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Final Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for access to the liquidity necessary for the continued flow of supplies and services to the Debtor necessary to sustain the operation of the Debtor's existing business and further enhance the Debtor's prospects for a successful restructuring. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED:**

1.     **Motion Granted.**  The Motion is granted on a final basis, subject to the terms set forth herein.  Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits.  This Final Order shall be valid, binding on all parties in interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014.

2.     **Authorization to Obtain DIP Financing.**

(a)     The Debtor is hereby authorized to enter into the DIP Documents.  The Debtor is hereby authorized to borrow money pursuant to the DIP Credit Agreement in an aggregate principal or face amount of up to $71,000,000, in accordance with the terms of the Interim Orders, this Final Order and the DIP Documents, which may be used for all purposes not prohibited under the DIP Documents, including, to provide working capital for the Debtor, to pay-down the Prepetition Debt, to pay interest, fees and expenses in accordance with the Interim Orders, this Final Order and the DIP Documents and to make the Adequate Protection Payments and any other payments permitted to be made by the Court and strictly in accordance with the Interim Orders, this Final Order, the DIP Credit Agreement and the other DIP Documents.

(b)     In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including the execution or recordation of security agreements, mortgages, deeds of trust, and financing statements), and to pay all fees in accordance with the Interim Orders, this Final Order, the DIP Documents and take such actions, in each case as may be reasonably required or necessary for the Debtor's performance of its obligations under the DIP Financing (it being understood for the avoidance of doubt that the recording of mortgages or deeds of trust and the payment of fees in connection therewith shall be subject to the terms of the DIP Documents), including:

i.     the execution, delivery and performance of the Loan Documents (as defined in that certain Senior Secured Super Priority Debtor-in-Possession Loan and Security Agreement substantially in the form that was filed with the Court on October 9, 2012, as Exhibit

8 to the Declaration of Keith F. Cooper (Dkt. No. 8) (the "DIP Credit Agreement")) and any exhibits attached thereto, including the Budget and any Security Documents or Loan Documents (each as defined in the DIP Credit Agreement, or any other mortgages or deeds of trust contemplated thereby (collectively, the "DIP Documents"),

    ii.    subject to the terms of the DIP Credit Agreement, the execution, delivery and performance of one or more amendments to the DIP Credit Agreement for any purpose, in each case in such form as the Debtor and the DIP Lender may agree, provided that approval of the Court shall be required for amendments to the DIP Credit Agreement that (A) shorten the maturity of the extensions of credit thereunder or (B) increase the commitments or the rate of interest payable thereunder,

    iii.    the non-refundable payment to the DIP Lender of the fees referred to in the DIP Credit Agreement (as modified by paragraph 27 of this Final Order) and reasonable costs and expenses as may be due from time to time, including fees and expenses of the counsel and other professional advisors retained by the DIP Lender, as provided for in the DIP Documents, and

    iv.    the performance of all other acts required under or in connection with the DIP Documents.

    (c)    Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of the DIP Documents.  Subject to paragraph 25, no obligation, payment, transfer or grant of security under the DIP Documents, this Final Order or the Interim Orders shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including under section 502(d) of the Bankruptcy Code), or subject to any disallowance, disgorgement, recharacterization, subordination (whether equitable, contractual or otherwise) defense, reduction, setoff, offset, recoupment, counterclaim, cross-claim or challenge of any kind or nature.

    **3.    Superpriority Claims.**

    (a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP

Obligations shall constitute allowed claims against the Debtor with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations (as defined below)) and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof (including avoidance actions arising under Chapter 5 of the Bankruptcy Code), subject only to the payment of the Carve-Out.

4.    **DIP Liens.**  Excluding avoidance actions under Chapter 5 of the Bankruptcy Code (other than avoidance actions under section 549 of the Bankruptcy Code and the proceeds thereof, which shall constitute DIP Collateral, as defined below), as security for the DIP Obligations, effective and perfected upon the date of entry of the Interim Order entered October 11, 2012 and without the necessity of the execution, recordation of filings by the Debtor of mortgages, deeds of trust, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lender of, or over, any DIP Collateral, the following security interests and liens are hereby granted (which grant is made with the power of sale under applicable state law with respect to any and all real property or leasehold interests, which power may be exercised by the DIP Lender) to the DIP Lender (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"), subject to the Carve-Out (all such liens and security interests granted to the DIP Lender, pursuant to the Interim Orders, this Final Order and the DIP Documents, the "DIP Liens"):

(a)    First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior

security interest in and lien upon all pre- and post-petition property of the Debtor, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "Unencumbered Property"), including all cash of the Debtor and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, commercial tort claims, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, equity interests of subsidiaries and the proceeds of all the foregoing.

(b)     Liens Priming Prepetition Secured Lender's Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtor, including Cash Collateral and all other Prepetition Collateral that is subject to the existing liens presently securing the Prepetition Debt.  Such security interests and liens of the DIP Lender shall be senior in all respects to the interests in such property of the Prepetition Secured Lender arising from current and future liens of the Prepetition Secured Lender (including the Adequate Protection Liens (as defined below)), but shall not be senior to any valid, perfected and unavoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, if such liens were senior to the liens of the Prepetition Secured Lender.

(c)     Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all collateral pledged to secure (i) that certain $2,000,000 promissory note in favor of the Lillian D. Zacky Trust U/D/T dated July 26, 1988 granted by Debtor on September 28, 2012, (ii) that certain $1,000,000 promissory note in favor of the Lillian D. Zacky Trust U/D/T dated July 26, 1988 granted by Debtor on September 7, 2012, (iii) that certain $1,000,000 promissory note in favor of the Richard N. Zacky Irrevocable Trust dated 11/25/07 granted by Debtor on September 7, 2012, (iv) indebtedness to Robert Reiser & Co., Inc. secured by a security interest in one VEMAG Model MMP220 Minced Meat Portioner; one Model. 2380 Tray

Feeder; and one Model 1120 Tray Denester - PTP pursuant to a UCC-1 financing statement filed on October 31, 2011, (v) to the extent that Western Milling, LLC holds a valid, perfected first priority lien under Section 57510 of the California Food and Agricultural Code (the "Asserted WM Lien"), indebtedness secured by the Asserted WM Lien, and (vi) to the extent that such lien is valid, and to the same extent, priority and validity as existed pre-petition, the general warehouse lien of Dreisbach Enterprises ("Dreisbach") with respect to the goods (the "Pre-Petition Inventory") it received prior to the Petition Date (the "Pre-Petition Warehouse Lien") (collectively, the "Permitted Prior Liens"), or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Lender are junior to such valid, perfected and unavoidable liens.

(d)     Liens Senior to Certain Other Liens.  The DIP Liens and the Adequate Protection Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date, including any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor, unless expressly permitted to be senior under the DIP Credit Agreement or a statutory lien that arises under applicable non-bankruptcy law and is determined by the Court to be senior to the DIP Liens and/or the Adequate Protection Liens.

(e)     To the extent that Dreisbach releases any Pre-Petition Inventory at the request of the Debtor, Dreisbach is hereby granted a replacement lien on all post-petition inventory to the same extent, priority and validity as the Pre-Petition Warehouse Lien; and shall retain its general warehouse lien with respect to the goods it receives after the Petition Date to the extent that such lien is valid, and with the same priority as the Pre-Petition Warehouse Lien, to the extent such lien is valid.

(f)     to the extent that Western Milling, LLC holds a valid, perfected lien under Section 57510 of the California Food and Agricultural Code that is junior to the Prepetition Liens and the DIP Liens (the "Asserted WM Junior Lien"), Western Milling, LLC is hereby granted a

replacement lien to the same extent, priority and validity as the Asserted WM Junior Lien.

(g)    Notwithstanding any provision in the DIP Documents, the Interim Orders or this Final Order, the rights of setoff, recoupment, other defenses and claims of Integrated Grain & Milling, Inc. ("IGM"), if any, are not primed, impaired or affected in any form whatsoever, and IGM retains all such rights, defenses and claims.

**5.    Protection of DIP Lender's Rights.**

(a)    Subject to Paragraph 5(b) herein, so long as there are any borrowings or other amounts or obligations outstanding under the DIP Credit Agreement, the Prepetition Secured Lender shall (i) take no action, other than as provided for by the DIP Documents, to foreclose upon or recover in connection with the liens granted thereto pursuant to the Prepetition Loan Documents, the Interim Orders or this Final Order, or otherwise exercise remedies against any DIP Collateral, (ii) be deemed to have consented to any release of DIP Collateral authorized under the DIP Documents and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral unless, solely as to this clause (iii), the DIP Lender files financing statements or other documents to perfect the liens granted pursuant to the Interim Orders or this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date.

(b)    The DIP Lender shall be permitted to seek a modification or vacatur of the automatic stay provisions of section 362 of the Bankruptcy Code (for which the DIP Lender shall be entitled to a hearing before the Court to consider such relief on five days notice to the Debtor, counsel to the Committee and the U.S. Trustee, and such parties shall be deemed to have consented to such shortened notice) to the extent necessary to permit the DIP Lender to exercise all rights and remedies against the DIP Collateral provided for in the DIP Documents (including the right to set off against accounts maintained by the Debtor with the DIP Lender, or otherwise subject to the control of the DIP Lender), (i) upon the occurrence and during the continuance of a DIP Order Event of Default (as defined below), or (ii) on the date on which all loans and

obligations under the DIP Facility shall be repaid in full in cash, which shall be the earliest of: (a) the stated maturity of the DIP Credit Agreement, which shall be January 31, 2013, (b) the effective date of any chapter 11 plan of the Debtor, (c) November 7, 2012 if the Final DIP Order Effective Date (as defined in the DIP Credit Agreement) shall not have occurred by such date and (d) the acceleration of the loans or termination of any amount of the DIP Obligations, including, without limitation, as a result of the occurrence of an Event of Default (as defined in the DIP Credit Agreement) (the "Maturity Date").

(c)    In any hearing after giving effect of the aforementioned notice regarding any exercise of rights or remedies, the only issues that may be raised by any party in opposition thereto shall be whether, in fact, a DIP Order Event of Default has occurred and is continuing. The Debtor and the Prepetition Secured Lender hereby waive their right to seek relief, including under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender set forth in the Interim Orders, this Final Order or the DIP Documents.  After the Maturity Date, the automatic stay shall be deemed modified and the DIP Lender and the Prepetition Secured Lender may pursue all rights and remedies against the DIP Collateral and Prepetition Collateral, as applicable, in such manner as they shall agree upon in conformance with applicable law, the Interim Orders and this Final Order.  In no event shall the DIP Lender or the Prepetition Secured Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral.

**6.    Events of Default.**  The following shall constitute an event of default under this Final Order, unless waived in writing by the DIP Lender under the DIP Documents (the "DIP Order Events of Default"):

(a)    the occurrence of an "Event of Default" under the DIP Credit Agreement, as set forth therein; or

(b)    any other breach or default by the Debtor of the terms and provisions of this Final Order.

**7.    Notice of DIP Order Event of Default.**  Promptly upon the Debtor becoming

aware of a DIP Order Event of Default, the Debtor shall notify the DIP Lender, the Prepetition Secured Lener, counsel to the Committee and the U.S. Trustee.

**8. Limitation on Charging Expenses Against Collateral.** Except to the extent of the Carve-Out, no expenses of administration of the Chapter 11 Case or any proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral or the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the DIP Lender or the Prepetition Secured Lender, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender or the Prepetition Secured Lender.

**9. Authorization to Use Cash Collateral.** Subject to the terms of the Interim Orders and this Final Order, the Debtor is authorized to use Cash Collateral in which the Prepetition Secured Lender may have an interest, strictly in accordance with the terms, conditions, and limitations set forth in the Interim Orders and this Final Order, without further approval by this Court. All Cash Collateral collected in the ordinary course of business constitutes Prepetition Collateral. Any dispute in connection with the use of Cash Collateral shall be heard by this Court. Unless waived by the DIP Lender in its sole discretion, the Debtor's right to use Cash Collateral shall terminate upon the occurrence of the Maturity Date unless the DIP Financing has been indefeasibly repaid in full in cash prior to such date; provided, that any ordinary payroll items paid in accordance with the Budget where checks have been issued but not cashed (and, for avoidance of doubt, any trust fund tax payments due and owing, the non-payment of which would give rise to personal liability of officers or directors) shall be honored. On the Maturity Date, the automatic stay shall be deemed vacated and modified pursuant to paragraph 5(b) above, and the DIP Lender and the Prepetition Secured Lender may pursue all rights and remedies against the DIP Collateral and the Prepetition Collateral, as applicable, in such manner as they shall agree upon in conformance with applicable law, the Interim Orders and this Final Order. Notwithstanding anything herein, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Lender under the Interim Orders and this Final Order shall survive the

Maturity Date.

**10.** **Adequate Protection.** The Prepetition Secured Lender is entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection for and equal in amount to the aggregate net diminution in the value of the Prepetition Secured Lender's interests in the Prepetition Collateral, including the Cash Collateral, including any such net diminution resulting from the sale, lease or use by the Debtor (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition Secured Lender's security interests and liens in the Prepetition Collateral by the DIP Lender pursuant to the DIP Documents, the Interim Orders and this Final Order and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (each such aggregate net diminution for each Prepetition Lender, a "Diminution in Value").  As adequate protection, the Prepetition Secured Lender is hereby granted the following (collectively, the "Adequate Protection Obligations"):

(a) Fees and Expenses.  The Debtor is authorized and directed to pay, upon presentation of invoices and without regard to whether such fees and expenses were incurred prepetition or postpetition, the reasonable fees and expenses incurred by:  (i) the Prepetition Secured Lender, (ii) Munger Tolles & Olson LLP, as co-counsel to the Prepetition Secured Lender; (iii) McKool Smith LLP, as co-counsel to the Prepetition Secured Lender; and (iv) such other professional advisors, consultants, or appraisers, including additional legal counsel or financial advisors, retained by the Prepetition Secured Lender, in each case in connection with (a) evaluating, protecting, preserving, enforcing the rights and interests of the Prepetition Secured Lender, or (b) otherwise in connection with the Chapter 11 Case.  The Debtor is hereby authorized and directed to pay all fees, costs, and expenses in accordance with the terms of the Interim Orders and this Final Order, without the Prepetition Secured Lender having to file any further application with this Court for approval or payment of such fees, costs or expenses, provided that the Debtor shall provide all bills of the Prepetition Secured Lender to the Office of the United States Trustee and counsel to the Committee within one business day of receipt and at least five business days prior to payment.  Any such fees, costs and expenses incurred by the Prepetition Secured Lender shall be paid within ten calendar days of delivery service on the

parties noted above unless an objection is asserted to such payment.  The Prepetition Secured Lender's bills shall not be required to adhere to the United States Trustee Guidelines or any other rules applicable to the fees of professionals retained pursuant to an order of the Court.   All amounts paid as adequate protection are deemed permitted uses of Cash Collateral.

(b)    Adequate Protection Liens.  To the extent of any Diminution in Value, the Prepetition Secured Lender is hereby granted (effective and perfected upon the date of entry of the Interim Order on October 11, 2012 and without the necessity of the execution by the Debtor of mortgages, deeds of trust, security agreements, pledge agreements, financing statements or other agreements) a replacement security interest in and lien upon all the DIP Collateral, subject and subordinate only to (i) the security interests and liens granted to the DIP Lender for the benefit of itself and the DIP Lender in the Interim Orders and this Final Order and pursuant to the DIP Documents, (ii) all valid, enforceable, perfected and unavoidable liens on all of the Debtor's assets and property in existence as of the Petition Date or duly perfected after Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case solely to the extent senior to the Prepetition Liens and (iii) the Carve-Out (the "Adequate Protection Liens").

(c)    Adequate Protection Payments.   The Prepetition Secured Lender shall receive adequate protection in the form of (i) payment of all of the proceeds of the Prepetition Collateral pursuant to the Interim Orders and this Final Order and (ii) payments in the amount of interest (which shall be payable at the non-default rate under the Original Credit Facility), fees, costs, expenses (including  reasonable attorneys' fees and expenses), indemnities and other amounts with respect to the Prepetition Debt in accordance with the Original Credit Facility (collectively, the "Adequate Protection Payments").

(d)    Section 507(b) Claim.  To the extent of any Diminution in Value, the Prepetition Secured Lender is hereby granted, against the Debtor as provided for in section 507(b) of the Bankruptcy Code, a superpriority claim, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from

and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof, (including avoidance actions arising under Chapter 5 of the Bankruptcy Code), subject only to the payment of the Carve-Out and immediately junior to the claims under section 364(c)(1) of the Bankruptcy Code held by the DIP Lender, provided, however, that the Prepetition Secured Lender shall not receive or retain any payments, property or other amounts in respect of the superpriority claims under section 507(b) of the Bankruptcy Code granted hereunder or under the Prepetition Loan Documents unless and until the DIP Obligations have indefeasibly been paid in cash in full, the (the "<u>Adequate Protection Claim</u>").

(e) <u>Information</u>. The Debtor shall (i) provide the Prepetition Secured Lender with any written financial information or periodic reporting that is provided to, or required to be provided to the DIP Lender, (ii) without duplication of the financial information or periodic reporting that is provided pursuant to clause (i), shall continue to provide the Prepetition Secured Lender with financial and other reporting substantially in compliance with the Prepetition Loan Documents, (iii) reasonably in advance of filing to permit review (and, at the option of Prepetition Secured Lender, comment) by the Prepetition Secured Lender, any motions, replies, objections, memoranda or other pleadings to be filed with the Court (or any other court) in, or in connection with, the Chapter 11 Case, (iv) weekly operational reports customarily prepared by the Debtor prior to the Petition Date, (v) any financial and other information provided to the Committee, contemporaneously with the delivery to such Committee; and (vi) such other financial and other information as may otherwise be requested by the Prepetition Secured Lender from time to time during the Chapter 11 Case, in each case as promptly as practicable under the circumstances; provided, however, that the Debtor shall not be required to deliver any privileged information provided to the Committee, but the Debtor shall provide (a) notice to the Prepetition Secured Lender that privileged information has been delivered to the Committee and (b) copies of any privileged information provided to the Committee if such information is no longer privileged for any reason whatsoever (including due to any waiver resulting from delivery to any such recipient).

11. **<u>Compliance with Prepetition Loan Documents</u>.** The Debtor shall comply with

the Prepetition Loan Documents in all material respects other than as modified herein or as prohibited by the Bankruptcy Code.

**12.** **Carve-Out.**

(a) "Carve-Out" means (i) all unpaid fees required to be paid in the Case to the Clerk of the Court and to the office of the U.S. Trustee under 28 U.S.C. §1930, whether arising prior to or after the delivery of the Carve-Out Trigger Notice (defined below); (ii) all reasonable and documented unpaid fees, costs, disbursements and expenses, including, without limitation, success fees (collectively, the "Professional Fees"), of professionals retained by the Debtor and the Committee in the Case (collectively, the "Professionals") that are incurred and earned (i) prior to the delivery by the DIP Lender of a Carve-Out Trigger Notice, which are allowed by the Bankruptcy Court (whether allowed by such court prior to or after delivery of a Carve-Out Trigger Notice) and remain unpaid after application of any retainers, provided that all such amounts shall be in accordance with and no greater than the line item contained for that purpose in the Budget and (ii) on or after the delivery by the DIP Lender of a Carve-Out Trigger Notice, which are allowed by the Bankruptcy Court and remain unpaid after application of any retainers, in an aggregate amount not to exceed $500,000, in the case of clause (ii) above allocated among such Professionals on a pro rata basis based on the Budget; and (iii) in the event of a conversion of the Case to cases under chapter 7 of the Bankruptcy Code, all fees and expenses incurred by a trustee and any professional retained by such trustee in an aggregate amount not to exceed $150,000. The Carve-Out shall not include the payment of any claims arising under section 503(b)(9) of the Bankruptcy Code.

(b) The term "Carve-Out Trigger Notice" shall mean a written notice delivered by the DIP Lender to the Debtor's counsel, the U.S. Trustee, and lead counsel to the Committee, which notice may be delivered at any time following the occurrence and during the continuation of any Event of Default.

(c) Notwithstanding the foregoing, no more than $25,000 of the Carve-Out, any cash collateral or proceeds of the DIP Financing may be used for any of the following purposes (each of (a)-(e), a "Lender Claim"): (a) investigate (including, without limitation,

discovery proceedings), object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents or the Prepetition Loan Documents, or the liens or claims granted under the Interim Orders, this Final Order, the DIP Documents or the Prepetition Loan Documents, (b) assert any Potential Claim or Defense (as defined below), (c) prevent, hinder or otherwise delay the DIP Lender's or the Prepetition Secured Lender's assertion, enforcement or realization on the Prepetition Collateral or the DIP Collateral in accordance with the DIP Documents, the Prepetition Loan Documents, the Interim Orders or this Final Order, (d) assert or prosecute any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against the Prepetition Secured Lender (in its capacity as a Prepetition Secured Lender) or DIP Lender or their affiliates, representatives, attorneys or advisors in connection with matters related to the Prepetition Loan Documents, the Prepetition Debt or the Prepetition Collateral, or other Potential Claims or Defenses, or (e) seek to modify any of the rights granted to the DIP Lender or the Prepetition Secured Lender hereunder or under the DIP Documents or the Prepetition Loan Documents, in each of the foregoing cases without such party's prior written consent.

**13.** **Release.** Subject to the rights set forth in paragraph 25 of this Final Order, the Debtor, on behalf of itself and its estate (including any successor trustee or other estate representative in the Chapter 11 Case or any successor case) and any party acting by, through, or under the Debtor or its estate, forever and irrevocably (i) release, discharge, waive, and acquit the Prepetition Secured Lender (only in its capacity as the Prepetition Secured Lender), the DIP Lender (only in its capacity as the  DIP Lender), and each of their respective, affiliates, agents, representatives, partners, financial advisors, legal advisors, managers, consultants, accountants and attorneys (collectively, the "Released Parties") of and from (each a "Potential Claim or Defense"): any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including any so-called "lender liability" claims, equitable subordination claims or defenses, or causes of actions under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law (including under section 502(d) of the

Bankruptcy Code), existing as of the Petition Date, solely with respect to or relating to the Prepetition Loan Obligations, the Prepetition Liens, the Prepetition Loan Documents, the DIP Obligations, the DIP Documents, the DIP Financing; and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the Prepetition Secured Lender or the DIP Lender with respect to the Prepetition Loan Documents and the DIP Documents; and (ii) waive any and all defenses (including offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and nonavoidability of the Prepetition Loan Obligations, the Prepetition Liens, the DIP Obligations or the DIP Liens.

**14.    Indemnification.**  The Debtor shall indemnify, pay and hold harmless the DIP Lender (and each of their respective, affiliates, agents, representatives, partners, financial advisors, legal advisors, managers, consultants, accountants and attorneys) against any loss, liability, cost or expense incurred in respect of the DIP Financing or the use or the proposed use of proceeds thereof (except to the extent resulting from the gross negligence or willful misconduct of the indemnified party), including the costs and expenses incurred by the DIP Lender and in connection with the negotiation, documentation and administration of the DIP Financing (including fees and expenses of counsel and other advisors), and costs and expenses incurred by the DIP Lender in connection with any default in respect of the DIP Financing, any exercise of remedies in respect thereof or otherwise in connection with the DIP Financing.

**15.    Cash Management.**  The Debtor shall not seek approval of any cash management system without the prior approval of the DIP Lender and the Prepetition Secured Lender, and any order approving such cash management system shall be acceptable to the DIP Lender and the Prepetition Secured Lender.

**16.    Equities of the Case.**  Subject to and effective upon entry of the Final Order and in light of the subordination of their liens to the Carve-Out, (i) the Prepetition Secured Lender shall be entitled to all benefits of Bankruptcy Code section 552(b) and (ii) the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to such parties with respect to the proceeds, product, offspring, or profits of any of its collateral.

///

**17.    Collateral Rights.**

(a)    The Debtor shall not sell, lease, transfer or otherwise dispose of its interest in the Prepetition Collateral or DIP Collateral outside the ordinary course of business in excess of $50,000 in the aggregate during the course of the Case without the need for approval from the DIP Lender and the Prepetition Secured Lender, or seek authority of this Court to do any of the foregoing, without the prior written consent of the DIP Lender and the Prepetition Secured Lender.  Without limiting the foregoing, in the event of any such sale, lease, transfer, license, or other disposition of property of the Debtor that constitutes Prepetition Collateral or DIP Collateral outside the ordinary course of business (to the extent permitted by the DIP Documents, the Prepetition Loan Documents, the Interim Orders and this Final Order), the Debtor is authorized and directed, without further notice or order of this Court, to immediately pay 100% of the net cash proceeds resulting therefrom (i) in the case of a sale of DIP Collateral that does not constitute Prepetition Collateral, to the DIP Lender until the DIP Facility is indefeasibly paid in full and thereafter to the Prepetition Secured Lender, or (ii) in the case of a sale of DIP Collateral that also constitutes Prepetition Collateral, to the Prepetition Secured Lender until the Prepetition Obligations are indefeasibly paid in full and thereafter to the DIP Lender.

(b)    In the event of any casualty, condemnation, or similar event with respect to property that constitutes DIP Collateral or Prepetition Collateral, the Debtor is authorized and directed to pay 100% of any insurance proceeds, condemnation award, or similar payment (i) in the case of a sale of DIP Collateral that does not constitute Prepetition Collateral, to the DIP Lender until the DIP Facility is indefeasibly paid in full and thereafter to the Prepetition Secured Lender, or (ii) in the case of a sale of DIP Collateral that also constitutes Prepetition Collateral, to the Prepetition Secured Lender until the Prepetition Obligations are indefeasibly paid in full and thereafter to the DIP Lender.

**18.    Credit Bid Rights.**  The DIP Lender on account of the DIP Obligations and the Prepetition Secured Lender on account of the Prepetition Loan Obligations, shall have the right to "credit bid" pursuant to section 363(k) of the Bankruptcy Code during any sale of any of the DIP Collateral or the Prepetition Collateral whether such sale occurs pursuant to Bankruptcy Code

section 363, as part of any plan subject to confirmation under Bankruptcy Code section 1129, or under applicable state law with respect to any judicial foreclosure or foreclosure by the power of sale granted under Paragraph 4 above.

**19.     Reservation of Rights of Prepetition Secured Lender.**     Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly (i) the Prepetition Secured Lender's rights to seek any other or supplemental relief in respect of the Debtor, including the right to seek additional adequate protection, (ii) any of the rights of the Prepetition Secured Lender under the Bankruptcy Code or under applicable nonbankruptcy law, including (a) the right to request modification of the automatic stay, (b) request dismissal of the Chapter 11 Case, conversion of the Chapter 11 Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with or without expanded powers, or (c) to propose, subject to the provisions of Bankruptcy Code section 1121, a chapter 11 plan of reorganization or liquidation.  Nothing contained herein shall be deemed a finding by the Court or an acknowledgement by the Prepetition Secured Lender that the adequate protection granted herein does in fact adequately protect the Prepetition Secured Lender against any diminution in value of its interests in the Prepetition Collateral.

**20.     No Waiver.**  This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the Prepetition Secured Lender may have to bring or be heard on any matter brought before this Court.

**21.     No Waiver by Failure to Seek Relief.**  The delay or failure of the Prepetition Secured Lender to seek relief or otherwise exercise their rights and remedies under this Final Order, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights thereunder, or otherwise of the Prepetition Secured Lender.

**22.     Automatic Perfection of DIP Liens and Adequate Protection Liens.**

(a)     Subject to the provisions of Paragraphs 4 and 10 above, the DIP Lender and the Prepetition Secured Lender are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien and similar instruments in any jurisdiction, or take possession of or control over, or take any

other action, in each case to the extent necessary or reasonably required by the DIP Lender to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Lender or the Prepetition Secured Lender shall, in their sole discretion, file such financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien and similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, at the time the Interim Order was entered on October 11, 2012, and without limitation of the foregoing, the DIP Lender shall have the right to cause the DIP Liens to be foreclosed judicially or by power of sale under applicable state law and all other rights of a secured party under the applicable Uniform Commercial Code.  Upon the request of the DIP Lender and the Prepetition Secured Lender, without any further consent of any party, are authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Lender to further validate, perfect, preserve and enforce the DIP Liens.

(b)     A certified copy of this Final Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, deeds of trust, notices of lien and similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording.

(c)     The DIP Lender shall be entitled, pursuant to paragraph 4, to the benefit of any financing statements, mortgages, deeds of trust, notices of lien and similar instruments filed by the Prepetition Secured Lender, and the possession of or control over any property of the Debtor by the Prepetition Secured Lender, for purposes of validating and perfecting the liens and security interests granted to the DIP Lender hereunder and placing third parties on notice of the encumbrance of the property subject to such liens and security interests, irrespective of whether the liens and security interests of the Prepetition Secured Lender are subsequently avoided, subordinated or invalidated.

23.     **Preservation of Rights Granted Under the Interim Orders and the Final Order.**

(a)     Other than as expressly permitted by the DIP Documents, (i) no lien, deed of trust, or mortgage shall be granted or allowed on any property of the Debtor and no claim or lien having a priority superior to or pari passu with those granted by the Interim Orders or this Final Order to the DIP Lender or to the Prepetition Secured Lender shall be granted or allowed while any portion of the DIP Financing (or any refinancing thereof) or the Commitments thereunder or the DIP Obligations or the Adequate Protection Obligations remain outstanding and (ii) the DIP Liens and the Adequate Protection Liens shall not be (A) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estates under section 551 of the Bankruptcy Code or (B) subordinated to or made pari passu with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Unless all DIP Obligations shall have been indefeasibly paid in full and the Adequate Protection Obligations shall have been indefeasibly paid in full, the Debtor shall not seek, and it shall constitute a DIP Order Event of Default if the Debtor seeks, or if there is entered, (i) any material modification or extension of the Final Order without the prior written consent of the DIP Lender, or (ii) an order converting or dismissing the Chapter 11 Case.

(c)     If an order dismissing any of the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the DIP Lender and, as applicable, the Prepetition Secured Lender, pursuant to the Interim Orders or this Final Order shall continue in full force and effect in accordance with the terms hereof and shall maintain their priorities as provided in the Interim Orders or this Final Order until all DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and

1  security interests referred to in (i) above.

2          (d)    If any or all of the provisions of the Interim Orders or this Final Order are

3  hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall

4  not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations incurred

5  prior to the actual receipt of written notice by the DIP Lender or Prepetition Secured Lender, as

6  applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity

7  or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Credit

8  Agreement with respect to any DIP Obligations or Adequate Protection Obligations.

9  Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral, or

10 DIP Obligations or Adequate Protection Obligations incurred by the Debtor to the DIP Lender or

11 the Prepetition Secured Lender prior to the actual receipt of written notice by the DIP Lender and

12 Prepetition Secured Lender of the effective date of such reversal, stay, modification or vacatur

13 shall be governed in all respects by the original provisions of the Interim Orders and this Final

14 Order, and the DIP Lender and the Prepetition Secured Lender shall be entitled to all the rights,

15 remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, the Interim

16 Orders, this Final Order and pursuant to the DIP Documents with respect to all uses of Cash

17 Collateral, DIP Obligations and Adequate Protection Obligations.

18         (e)    Except as expressly provided in the Interim Orders, this Final Order or in

19 the DIP Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of

20 the DIP Lender granted by the provisions of the Interim Orders, this Final Order and the DIP

21 Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an

22 order converting the Chapter 11 Case to a case under chapter 7, dismissing the Chapter 11 Case,

23 or by any other act or omission or (ii) the entry of an order confirming a plan of reorganization in

24 the Chapter 11 Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has

25 waived any discharge as to any remaining DIP Obligations.  The terms and provisions of the

26 Interim Orders, this Final Order and the DIP Documents shall continue in the Chapter 11 Case, in

27 any successor Chapter 11 Case, or in any superseding chapter 7 case under the Bankruptcy Code,

28 and the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Lender

FINAL ORDER GRANTING
EMERGENCY MOTION TO APPROVE DIP
FINANCING AND USE CASH COLLATERAL

granted by the provisions of the Interim Orders, this Final Order and the DIP Documents shall continue in full force and effect.

**24.    Limitation on Use of DIP Financing Proceeds and Cash Collateral.** Notwithstanding anything herein or in any other order by this Court to the contrary, other than the $25,000 as set forth in paragraph 11(c), no borrowings, Cash Collateral, Prepetition Collateral, DIP Collateral or the Carve-Out may be used in connection with any Lender Claim, in any and all respects

**25.    Effect of Stipulations on Third Parties.**

(a)    Each stipulation, acknowledgment and release contained in the Interim Orders or this Final Order, including, but not limited to, in Paragraphs 4, 5 and 13 of this Final Order, shall be binding upon the Debtor and any successor thereto (including any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) under all circumstances.

(b)    Each stipulation, acknowledgement and release contained in the Interim Orders or this Final Order, including in Paragraphs 4, 5 and 13 of this Final Order, shall be binding upon all other parties in interest, including any committee (including the Committee), except to the extent that (i) the Committee, subject to the limitations contained in the Interim Orders or this Final Order, timely files an adversary proceeding or contested matter asserting a Lender Claim or a Potential Claim or Defense with respect to such stipulation, acknowledgement, release or admission (an "Asserted Lender Claim") by no later than the date that is the earliest of (A) 10 days before the first date scheduled for the confirmation hearing on the Plan and (B) January 4, 2013 (the "Challenge Expiration Date") and (ii) there is a final order in favor of the Committee sustaining such Asserted Lender Claim, provided that, as to the Debtor and any other party in interest other than the Committee, all Lender Claims and Potential Claims or Defenses are hereby irrevocably waived and relinquished as of the date hereof, and, with respect to the Committee, any Lender Claim or Potential Claim or Defense that is not an Asserted Lender Claim, shall be irrevocably waived and relinquished as of the Challenge Expiration Date.

(c)    The success of any particular Asserted Lender Claim shall not alter the binding effect on each party in interest of any stipulation or acknowledgement not subject to such

Asserted Lender Claim.  Except to the extent (but only to the extent) a timely filed adversary proceeding or contested matter asserting a Lender Claim and any Potential Claims or Defense is successful, (i) the Prepetition Debt shall constitute allowed claims, not subject to any disallowance, disgorgement, reduction, counterclaim, cross-claim, offset, setoff, subordination, recharacterization, defense, avoidance, or any other challenge of any kind or nature, for all purposes in the Chapter 11 Case and any subsequent chapter 7 case, (ii) the Prepetition Secured Lender's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to reduction, counterclaim, cross-claim, defense, recharacterization, subordination, avoidance or any other challenge and (iii) the Prepetition Debt, the Prepetition Secured Lender's liens on the Prepetition Collateral and the Prepetition Secured Lender shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including any successor thereto (including any chapter 7 or 11 trustee appointed or elected for the Debtor).

(d)    Nothing in the Interim Orders or this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any Potential Claims and Defenses, Lender Claims or any cause of action belonging to the Debtor or its estate against the DIP Lender, the Prepetition Secured Lender, or any other Released Party, including Lender Claims with respect to the Prepetition Loan Documents or the Prepetition Debt.

26.    **Commercial Lease Payments.**  In accordance with the Budget, the DIP Financing includes availability of amounts necessary for the Debtor to make certain post-petition lease payments.

27.    **DIP Financing Fees.**  Section 2.8 of the DIP Credit Agreement shall be replaced in its entirety with the foregoing:

2.8    <u>Interest and Fees</u>.  The Borrower shall pay the following amounts to the Lender, at the times indicated:

(a)    <u>Interest</u>.  The outstanding principal balance of the DIP Loans and all other Liabilities hereunder shall bear interest for the date such DIP Loan is disbursed, or the date such Liability is incurred, respectively at the rate of 6.00% per annum (the "**Interest Rate**").

(b) <u>Computation and Payment</u>.  Interest shall be computed on the basis of actual days elapsed over a 360-day year.  Interest shall be payable on each Interest Payment Date and upon the demand of Lender

(c) <u>Front-End Fee</u>. $500,000.

(d) <u>Collateral Monitoring Fee</u>. $25,000 per month.

All fees shall be fully earned on entry of the Final DIP Order and non-refundable under all circumstances.

(e) <u>Late Fees</u>.  If any (i) amount of principal or interest of any DIP Loan amount, whether at stated maturity, by acceleration or otherwise or (ii) any other amount payable by Borrower under any Loan Document is not paid when due (without regard to any applicable grace periods), such amount shall thereafter bear interest at a rate per annum at all times equal to the Default Rate and Borrower shall pay a late fee equal to five percent (5.0%) of such late payment of principal or interest, in each case, to the fullest extent permitted by applicable Laws.

28. **Pre-Petition Letter of Credit.**  Notwithstanding Section 2.5(b)(i) of the DIP Credit Agreement, the Pre-Petition L/C Support Amount shall not be deemed to have been made under the DIP Facility and such amount shall not be included in the DIP Obligations.

29. **Final Order Governs.**  In the event of any inconsistency between the provisions of this Final Order and the DIP Documents, the provisions of this Final Order shall govern.

30. **Binding Effect; Successors and Assigns.**  The DIP Documents and the provisions of the Interim Orders and this Final Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Case, including the DIP Lender, the Prepetition Secured Lender, the Committee, and the Debtor and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtor) and shall inure to the benefit of the DIP Lender, the Prepetition Secured Lender and the Debtor and its respective successors and assigns, provided, however, that the DIP Lender shall have no obligation to extend any financing to any chapter 7 trustee or chapter 11 trustee or any other party, except as otherwise provided in this Final Order.

31. **Adequate Notice.**  The Debtor shall promptly mail copies of this Final Order to the Notice Parties, any known party effected by the terms of the Final Order, and any other party requesting notice after the entry of this Final Order.

32. **Retention of Jurisdiction.**  This Court shall retain jurisdiction overall all matters

pertaining to the implementation, interpretation and enforcement of this Final Order, including after any dismissal of any of the Chapter 11 Case.

33.    **Rules of Construction.**  The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Final Order.  Any right or requirement in this Final Order involving the direction, discretion, consent, acceptance or approval of any of the DIP Lender or the Prepetition Secured Lender shall be exercised in the sole and absolute discretion of such party.

34.    **Waiver of Requirement to File Proofs of Claim.**  Neither the DIP Lender nor the Prepetition Secured Lender shall be required to file proofs of claim with respect to any of the DIP Obligations or Prepetition Loan Obligations.

35.    Subject to Paragraph 25, nothing in this Final Order shall limit or be deemed to limit the rights and remedies of the Committee and parties-in-interest to challenge the activities of the Prepetition Secured Lender and the roll-up of the Prepetition Debt into the DIP Facility.

Dated: November 13, 2012

Thomas C. Holman
United States Bankruptcy Judge

# EXHIBIT A

**Zacky Farms, LLC**
**Weekly Cash Flow Forecast**
**As of November 7, 2012**
*($ in 000s)*

| Forecast Week: Week-ending: | 1 12-Oct Forecast | 2 19-Oct Forecast | 3 26-Oct Forecast | 4 2-Nov Forecast | 5 9-Nov Forecast | 6 16-Nov Forecast | 7 23-Nov Forecast | 8 30-Nov Forecast | 9 7-Dec Forecast | 10 14-Dec Forecast | 11 21-Dec Forecast | 12 28-Dec Forecast | 13 4-Jan Forecast | 13 Week Total Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Sales** | $ 2,465.0 | $ 2,241.9 | $ 5,086.6 | $ 2,465.0 | $ 2,789.5 | $ 5,080.6 | $ 7,911.7 | $ 6,168.2 | $ 5,099.9 | $ 3,721.8 | $ 3,361.8 | $ 2,553.5 | $ 2,675.8 | $ 51,184.6 |
| **Total Receipts** | $ 2,241.9 | $ 2,241.9 | $ 2,586.6 | $ 2,465.0 | $ 2,789.5 | $ 5,080.6 | $ 7,911.7 | $ 6,168.2 | $ 5,099.9 | $ 3,721.8 | $ 3,361.8 | $ 3,401.3 | $ 2,878.5 | $ 50,758.7 |
| **Disbursements** | | | | | | | | | | | | | | |
| Food | $ 1,788.4 | $ 1,694.2 | $ 1,603.6 | $ 1,467.6 | $ 1,332.1 | $ 1,203.4 | $ 1,090.2 | $ 1,002.2 | $ 932.8 | $ 928.4 | $ 910.6 | $ 882.3 | $ 907.7 | $ 15,743.4 |
| Salaries | 825.0 | 700.0 | 964.0 | 879.0 | 816.0 | 918.0 | 918.0 | 588.0 | 629.0 | 807.0 | 616.0 | 757.0 | 605.0 | 10,012.0 |
| Contract Grower Pay | 75.6 | 45.2 | 44.1 | 48.3 | 46.7 | 44.3 | 41.2 | 36.4 | 31.0 | 25.3 | 18.6 | 21.7 | 21.7 | 500.2 |
| Outside Raw Material Purchases | 150.0 | 150.0 | 150.0 | 150.0 | 150.0 | 150.0 | 150.0 | 150.0 | 150.0 | 150.0 | 150.0 | 150.0 | 150.0 | 1,950.0 |
| Other Live Costs | 193.6 | 107.6 | 105.9 | 112.0 | 115.8 | 112.5 | 107.9 | 100.9 | 93.3 | 85.0 | 75.3 | 79.8 | 79.8 | 1,369.4 |
| Affiliate Ranch Leases | - | - | - | - | 186.0 | - | - | 186.0 | - | - | - | 186.0 | - | 558.1 |
| Debt Service | - | - | - | 114.0 | - | - | - | - | 177.4 | - | - | - | 208.6 | 500.0 |
| Capital Expenditures | 62.5 | 62.5 | 62.5 | 62.5 | 62.5 | 62.5 | 62.5 | 62.5 | 412.5 | 62.5 | 62.5 | 62.5 | 62.5 | 1,162.5 |
| Transportation | 159.6 | 95.5 | 93.0 | 102.0 | 98.5 | 93.6 | 87.0 | 76.8 | 65.5 | 53.4 | 39.3 | 45.9 | 45.9 | 1,056.1 |
| Utilities | 369.5 | 202.6 | 177.2 | 163.2 | 200.4 | 214.0 | 237.4 | 228.2 | 215.5 | 198.3 | 156.0 | 146.2 | 125.0 | 2,233.6 |
| Packaging | - | 199.8 | 209.9 | 206.0 | 200.0 | 192.9 | 181.3 | 168.5 | 168.5 | 154.8 | 138.7 | 146.2 | 182.6 | 2,516.6 |
| Repairs & Maintenance | 125.0 | 125.0 | 125.0 | 125.0 | 125.0 | 125.0 | 125.0 | 125.0 | 125.0 | 125.0 | 125.0 | 125.0 | 125.0 | 1,625.0 |
| SG&A | 189.5 | 199.8 | 213.6 | 338.5 | 201.8 | 198.6 | 194.2 | 202.9 | 314.6 | 544.8 | 162.8 | 182.6 | 301.6 | 3,245.3 |
| 503(b)(9)[3] | - | - | - | - | - | - | - | - | - | - | - | - | 6,400.0 | 6,400.0 |
| Other | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 1,300.0 |
| **Professional Fees and Other:** | | | | | | | | | | | | | | |
| Debtor Financial Advisors | $ - | $ - | $ - | $ - | $ - | $ 300.0 | $ - | $ - | $ - | $ 300.0 | $ - | $ - | $ 450.0 | $ 1,050.0 |
| Debtor Counsel | - | - | - | - | - | 100.0 | - | - | - | 100.0 | - | - | 150.0 | 350.0 |
| Other Debtor Professionals | - | - | - | - | - | 200.0 | - | - | - | 200.0 | - | - | 325.0 | 725.0 |
| **Debtor and DIP Lender Professional Fees[2]** | $ - | $ - | $ - | $ - | $ - | $ 600.0 | $ - | $ - | $ - | $ 600.0 | $ - | $ - | $ 925.0 | $ 2,125.0 |
| Committee Professional Fees | $ - | $ - | $ - | $ - | $ - | $ 40.0 | $ - | $ - | $ - | $ 40.0 | $ - | $ - | $ 60.0 | $ 140.0 |
| US Trustee Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Collateral Monitoring Fee | - | - | - | - | 25.0 | - | - | 25.0 | - | - | - | - | 25.0 | 75.0 |
| **Total Disbursements** | $ 4,038.7 | $ 3,482.4 | $ 3,838.5 | $ 3,872.1 | $ 3,668.8 | $ 4,062.2 | $ 2,976.3 | $ 3,285.2 | $ 3,415.1 | $ 3,874.4 | $ 2,554.8 | $ 2,682.5 | $ 10,684.2 | $ 52,432.2 |
| **Operating Cash Flow** | $ (1,796.8) | $ (1,240.6) | $ (1,251.9) | $ (1,407.1) | $ (876.3) | $ 1,018.4 | $ 4,935.4 | $ 2,883.1 | $ 2,494.8 | $ (152.5) | $ 807.0 | $ 718.8 | $ (7,805.7) | $ (1,673.5) |
| **Cumulative Operating Cash Flow** | $ (1,796.8) | $ (3,037.4) | $ (4,289.3) | $ (5,696.4) | $ (6,572.6) | $ (5,554.3) | $ (618.9) | $ 2,264.2 | $ 4,759.0 | $ 4,606.4 | $ 5,413.4 | $ 6,132.2 | $ (1,673.5) | $ (1,673.5) |
| **Loan Structure** | | | | | | | | | | | | | | |
| **Pre-Petition:** | | | | | | | | | | | | | | |
| Beginning Balance | $ 56,653 | $ 54,411 | $ 52,169 | $ 49,582 | $ 47,117 | $ 44,328 | $ 39,247 | $ 31,336 | $ 25,167 | $ 19,257 | $ 15,536 | $ 12,174 | $ 8,772 | $ 56,653 |
| Borrowing Needs - Draw / (Paydown) | (2,242) | (2,242) | (2,587) | (2,465) | (2,789) | (5,081) | (7,912) | (6,168) | (5,910) | (3,722) | (3,362) | (3,401) | (2,878) | (50,759) |
| Ending Balance | $ 54,411 | $ 52,169 | $ 49,582 | $ 47,117 | $ 44,328 | $ 39,247 | $ 31,336 | $ 25,167 | $ 19,257 | $ 15,536 | $ 12,174 | $ 8,772 | $ 5,894 | $ 5,894 |
| **Post Petition:** | | | | | | | | | | | | | | |
| Beginning Balance | $ - | $ 4,039 | $ 7,521 | $ 11,360 | $ 15,232 | $ 19,398 | $ 23,460 | $ 26,436 | $ 29,721 | $ 33,136 | $ 37,011 | $ 39,565 | $ 42,248 | $ - |
| Facility Front End Fee | - | - | - | - | 500 | - | - | - | - | - | - | - | - | 500 |
| Collateral Provided for Letter of Credit | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Borrowing Needs - Draw / (Paydown) | 4,039 | 3,482 | 3,839 | 3,872 | 3,666 | 4,062 | 2,976 | 3,285 | 3,415 | 3,874 | 2,555 | 2,683 | 10,684 | 52,432 |
| Ending Balance | $ 4,039 | $ 7,521 | $ 11,360 | $ 15,232 | $ 19,398 | $ 23,460 | $ 26,436 | $ 29,721 | $ 33,136 | $ 37,011 | $ 39,565 | $ 42,248 | $ 52,932 | $ 52,932 |
| **Total Outstanding Debt** | $ 58,449 | $ 59,690 | $ 60,942 | $ 62,349 | $ 63,725 | $ 62,707 | $ 57,772 | $ 54,888 | $ 52,394 | $ 52,546 | $ 51,739 | $ 51,020 | $ 58,826 | $ 58,826 |

[1] Amount in the week ending January 4, 2012 includes accrued and unpaid liabilities.

[2] Amount in the week ending January 4, 2012 includes accrued and unpaid liabilities. The Debtor anticipates the filing and approval of a motion that will allow interim monthly payment during the DIP Facility forecast period solely in the event that no Lender Claim (as defined in the DIP Order) has been bought by the Challenge Expiration Date (as defined in the DIP Order).

[3] Amount is an estimate of the total potential §503(b)(9) pre-petition claims and is included in the budget to demonstrate that sufficient availability in the proposed DIP Facility exists to pay such claims. The actual allowed amount of such claims is expected to be significantly less as the Debtor has been pre-paying (or paying old invoices prior to shipment of goods) for certain goods delivered in the twenty days prior to the filing. The Debtor reserves all rights to object to the validity or amount of any §503(b)(9) claim.