**14**

Scott E. Blakeley (State Bar No. 141418)
E-Mail: seb@blakeleyllp.com
Johnny White (State Bar No. 269306)
E-Mail: jwhite@blakeleyllp.com
BLAKELEY & BLAKELEY LLP
2 Park Plaza, Suite 400
Irvine, California 92614
Telephone: (949) 260-0611
Facsimile: (949) 260-0613

Scott H. Olson (State Bar No. 249956)
E-Mail:  solson@seyfarth.com
Ferry E. Lopez (State Bar No. 274080)
E-Mail:  flopez@seyfarth.com
SEYFARTH SHAW LLP
400 Capitol Mall, Suite 2350
Sacramento, California  95814-4428
Telephone:  (916) 448-0159
Facsimile:   (916) 558-4839

Carmine R. Zarlenga
*Pro Hac Vice*
E-Mail: czarlenga@mayerbrown.com
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Attorneys for Foster Poultry Farms d/b/a Foster Farms*

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>ZACKY FARMS, LLC, a California limited liability company,<br><br>           Debtor-in-Possession. | Case No.: 12-37961<br>Chapter 11<br>DC No.: FWP-22<br><br>Hearing Date, Time and Location:<br>Date:   February 6, 2013<br>Time:   2:00 p.m.<br>Place:  501 I Street, 6th Floor<br>            Department B, Courtroom 32<br>            Sacramento, CA 95814<br>Judge:   Honorable Thomas C. Holman |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND ..................................................................................................... 1

    A.    The Foster Farms/Zacky Farms Trademark License Agreement ............................... 1

    B.    The Pitman/Zacky Farms Asset Purchase Agreements ............................................. 3

POINT I ........................................................................................................................................ 3

THE DEBTOR MAY NOT SELL THE RIGHT TO USE ITS TRADEMARKS IN CONNECTION WITH THE SALE OF FRESH CHICKEN PRODUCTS BECAUSE THAT RIGHT IS NOT PROPERTY OF THE ESTATE ................................................................................... 3

POINT II ....................................................................................................................................... 4

SECTION 363(F) DOES NOT PERMIT THE DEBTOR TO SELL THE TRADEMARKS FREE AND CLEAR OF FOSTER FARMS' INTEREST ............................................................ 4

    (i)    Applicable Nonbankruptcy Law Does Not Permit the Sale Free and Clear of Foster Farms' Interest ................................................................................................... 4

    (ii)    Foster Farms Does Not Consent to Assignment of the Trademarks Free and Clear of Its Interest ........................................................................................................ 5

    (iii)    Foster Farms' Interest is Not a Lien ............................................................ 5

    (iv)    Foster Farms' Interest is Not in Bona Fide Dispute .................................... 5

    (v)    Foster Farms Could Not Be Compelled to Accept a Money Satisfaction of its Interest in a Legal or Equitable Proceeding ............................................................... 7

    A.    Foster Farms' Interest in the Trademarks Cannot be Satisfied with a Monetary Award ......... 7

    B.    The Ninth Circuit Applies Section 363(f)(5) in a Narrow Set of Circumstances ...................... 9

POINT III .................................................................................................................................... 10

THE TRADEMARK LICENSE AGREEMENT IS NOT AN EXECUTORY CONTRACT THAT MAY BE REJECTED .................................................................................................. 10

CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Cerritos Valley Bank v. Stirling* (2000) 81 Cal. App. 4th 1108 ............................................................. 5

*Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (B.A.P. 9th Cir. 2008) ....... 9, 10

*Dewey Ranch Hockey, LLC*, 406 B.R. 30 (Bankr. D. Ariz. 2009) ....................................................... 6, 7

*Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158 (S.D.N.Y. 2006) .......................................................... 9

*In re Collins*, 180 B.R. 447 (Bankr. E.D. Va. 1995) ................................................................................ 6

*In re Exide Techs.*, 607 F.3d 957 (3d Cir. 2010) ............................................................................. 10, 11

*In re Gaylord Grain L.L.C.*, 306 B.R. 624 ............................................................................................... 6

*In re Octagon Roofing*, 123 B.R. 583 (Bankr. N.D. Ill. 1991) ................................................................ 6

*In re Signal Hill-Liberia Ave. Ltd. Partnership*, 189 B.R. 648 (Bankr. E.D. Va. 1995) ......................... 3

*In re Simicich*, 71 B.R. 48 (Bankr. M.D. Fla. 1987) ................................................................................ 3

*In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057 (9th Cir. 2002) ...................................................... 6, 7

*In re Wegner*, 839 F.2d 533 (9th Cir. 1988) .......................................................................................... 10

*In re Weston*, 110 B.R. 452 (Bankr. E.D. Cal. 1989) ............................................................................... 3

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546 (4th Cir. 1994) ..................................................................................................................................................... 8

*Murphy v. Luthy Battery Co.* (1925), 74 Cal. App. 68 ............................................................................. 5

*MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293 (C.D. Cal. 2007) ......................................................... 8

*Nat'l Elevator Cab & Door Corp. v. H & B, Inc.*, Case No. 07 CV 1562, 2008 U.S. Dist. LEXIS 5389 (E.D.N.Y. Jan. 24, 2008) ......................................................................................................................... 8

*Power Balance LLC v. Power Force LLC*, Case No. SACV 10-1726, 2010 U.S. Dist. LEXIS 136574 (C.D. Cal. Dec. 14, 2010) ..................................................................................................................... 7, 8

*Stanislawski v. Jordan*, 337 F. Supp. 2d 1103 (E.D. Wis. 2004) ............................................................. 8

*Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999) ....................................................................... 8

**Statutes**

11 U.S.C. § 1115 ...................................................................................................................................... 3

11 U.S.C. § 363(f) ............................................................................................. 1, 4, 5, 6, 7, 9, 10, 11

11 U.S.C. § 541 ........................................................................................................................................ 3

Cal. Civ. Code § 1638 ........................................................................................................................... 5, 6

Cal. Civ. Code § 1644 .............................................................................................................................. 5

**OPPOSITION/OBJECTION OF FOSTER POULTRY FARMS D/B/A FOSTER FARMS TO DEBTOR'S MOTION FOR AUTHORITY TO SELL ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE**

Creditor, Foster Poultry Farms d/b/a Foster Farms ("Foster Farms"), by and through its undersigned counsel, in opposition to *Debtor's Motion for Authority to Sell All of the Debtor's Assets Free and Clear of All Liens, Claims, and Encumbrances Pursuant to Section 363 of the Bankruptcy Code* [Docket Nos. 468, 470, 641, 642, 644, 645, 646, 699, 700, 754, 755, 872, 873, and 874] (the "Motion"), respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The Debtor's Motion proposes to sell all of the Zacky Farms assets, including trademarks, to Pitman Family Farms ("Pitman"). While none of the supporting papers address Foster Farms' interest in those trademarks, or specifically state that the trademarks should be sold free and clear of Foster Farms' interest, at various points the Debtor advocates the sale of assets "free and clear of *all* liens, claims, encumbrances, or other interests" (*see e.g.* Docket No. 648, p. 1, emphasis added). As indicated in more detail below, however, Zacky Farms sold Foster Farms its right to use the trademarks in 2001 as part of a multi-million dollar acquisition.

2. As a result, Foster Farms is filing the present opposition in order to protect its paid-for interest in the Zacky Farms trademarks. 11 U.S.C. § 363(f) prohibits the Debtor from selling the trademarks free and clear of Foster Farms' interest if certain conditions are not met. As demonstrated below, none of these conditions are satisfied and, for that reason, this Court should find that Foster Farms' interest in the Zacky Farms trademarks must remain in effect after the sale. If this Court allows the sale to Pitman to continue, Foster Farms requests that any order specifically affirm Foster Farms' continued interest in the trademarks.

**FACTUAL BACKGROUND**

**A.    The Foster Farms/Zacky Farms Trademark License Agreement**

3. In 2001, the Debtor sold its entire chicken business to Foster Farms in a multi-million dollar acquisition. A true and correct copy of the Purchase Agreement (with redactions) was previously filed with this Court. *See* Docket No. 841.

4. The Purchase Agreement provided that effective at closing, the Sellers, including Debtor, would not use, and would not allow a third party to use, certain intellectual property in connection with the sale of chicken. *See* Purchase Agreement § 5.13. This intellectual property is listed in Schedule 2.2(i) to the Purchase Agreement, and includes the "Zacky Farms" name. A true and correct copy of Schedule 2.2(i) to the Purchase Agreement is attached as part of Exhibit A to the Declaration of Randall C. Boyce ("Boyce Declaration") filed herewith.

5. The Purchase Agreement also gave Foster Farms a temporary right to use certain trademarks, including the "Zacky Farms" name, for a period of 36 months following the closing. Purchase Agreement § 5.13. The relevant trademarks are set forth in Schedule 1.1(b) to the Purchase Agreement. A true and correct copy of Schedule 1.1(b) is attached as part of Exhibit A to the Boyce Declaration filed herewith.

6. After this temporary license period, both Foster Farms and the Debtor were permanently prohibited from using the "Zacky Farms" name in conjunction with the sale of fresh chicken products. Purchase Agreement § 5.13.

7. In addition, the parties allocated a substantial portion of the purchase price to goodwill alone. The allocation of the purchase price is set forth in Exhibit F to the Purchase Agreement. A true and correct copy of Exhibit F (with redactions) is attached as part of Exhibit A to the Boyce Declaration filed herewith.

8. At the closing of the sale, the parties entered a Trademark License Agreement which was aimed at facilitating their respective use of the various trademarks implicated in the acquisition. Similar to the Purchase Agreement, Section 10 of the Trademark License Agreement provided that after the expiration of the 36-month license period, neither party would have any further right to use the "Zacky Farms" name for purposes of selling chicken products. The prohibition was absolute and permanent. A true and correct copy of the Trademark License Agreement is attached to the Boyce Declaration filed herewith as Exhibit B.

9. Foster Farms has gone to great lengths to protect its interest in the Zacky Farms trademarks. For example, after learning that the Debtor was involved in the sale of chicken products using the "Zacky Farms" name, Foster Farms filed an adversary proceeding in this Court and moved to

enjoin Zacky Farms' use of the trademarks. *See Foster Poultry Farms v. Zacky Farms, Inc.*, Adversarial Proceeding No. 12-02672 at Docket No. 2 and 13.

10. After Zacky Farms agreed to halt any further use the "Zacky Farms" trademark for the duration of the bankruptcy proceeding, the case was dismissed by a judicially enforceable joint stipulation. *Id*. at Docket No. 58.

### B. The Pitman/Zacky Farms Asset Purchase Agreements

11. On January 30, 2013, the Debtor filed an amendment to this Motion that included its most recent Asset Purchase Agreements with Pitman, and which contained a list of trademarks being sold to Pitman. *See Exhibits in Support of Second Amendment to Debtor's Motion for Authority to Sell Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, and Encumbrances Pursuant to Section 363 of the Bankruptcy Code*, Exhibit 2, Schedule 2.1(h) [Docket No. 874]. At least four of the trademarks referenced in the Asset Purchase Agreements are governed by the use restrictions contained in the Trademark License Agreement. *Id*. However, the Asset Purchase Agreements fail to reaffirm Foster Farms' interest in those trademarks.

### POINT I

### THE DEBTOR MAY NOT SELL THE RIGHT TO USE ITS TRADEMARKS IN CONNECTION WITH THE SALE OF FRESH CHICKEN PRODUCTS BECAUSE THAT RIGHT IS NOT PROPERTY OF THE ESTATE

12. The Debtor's estate does not have a right to use the Zacky Farms trademarks in connection with the sale of fresh chicken products, as such a right is not property of the estate within the meaning of 11 U.S.C. §§ 541 and 1115. *See* 11 U.S.C. § 541 (describing interests that comprise the property of the estate); and 11 U.S.C. § 1115 (same).

13. Case law is in accord. "[S]ales of property under § 363(f) are limited to sales of property of the estate." *In re Signal Hill-Liberia Ave. Ltd. Partnership*, 189 B.R. 648, 652 (Bankr. E.D. Va. 1995)*; see also In re Weston*, 110 B.R. 452, 458 (Bankr. E.D. Cal. 1989) ("the real property was not property of the estate and the bankruptcy court did not have jurisdiction over the real property"); *In re Simicich*, 71 B.R. 48, 50 (Bankr. M.D. Fla. 1987) ("the chattels never became

1 property of the estate when the Debtors filed their petition under Chapter 7, consequently the Trustee
2 has no right to sell them.").

3   14.   The Debtor had no such right at the commencement of the case, and has not somehow
4 acquired it at any point since.  Pursuant to Section 10 of the Trademark License Agreement, the right
5 of any party to use the Zacky Farms brand in connection with the sale of fresh chicken products
6 expired several years ago.  It may not be revived through the mechanism of a Section 363(f) sale.

## POINT II

## SECTION 363(F) DOES NOT PERMIT THE DEBTOR TO SELL THE TRADEMARKS FREE AND CLEAR OF FOSTER FARMS' INTEREST

10   15.   Under Section 363(f) of the Bankruptcy Code, a debtor must meet one of the following
11 requirements before it can sell property free and clear of the liens, encumbrances, or other interests of
12 another entity:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

18   16.   As set forth below, the Debtor cannot meet any prong of Section 363(f).

### (i) Applicable Nonbankruptcy Law Does Not Permit the Sale Free and Clear of Foster Farms' Interest

21   17.   Applicable nonbankruptcy law prohibits the Debtor from selling the trademarks free
22 and clear of Foster Farms' interest.  Notably, the Trademark License Agreement is governed by
23 California law (Section 13(b)), and in pertinent part provides that after Foster Farms' trademark license
24 expires, neither "[the Debtor] *nor any successor in interest* shall have any further right to the Licensed
25 Intellectual Property in connection with the production, sale or distribution of chicken products."
26 (Section 10, emphasis added)

18. The Trademark License Agreement further prohibits assignment without Foster Farms' prior written consent (Section 13(e)), and provides that the agreement shall be "binding upon… the parties and their respective legal representatives, successors and permitted assigns." (Section 13(f)).

19. In California, contract terms are interpreted and enforced as they are written. *See* Cal. Civ. Code § 1644 (2012) ("The words of a contract are to be understood in their ordinary and popular sense"); *see also* Cal. Civ. Code § 1638 (2012) ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"); *Cerritos Valley Bank v. Stirling* (2000) 81 Cal. App. 4th 1108, 1116, 1118 (affirming grant of summary judgment in breach of contract claim based on unambiguous contract language). Where, as here, a contract contains a provision that it may not be assigned without the other party's written consent, that term will be upheld as written. *See, e.g., Murphy v. Luthy Battery Co.* (1925), 74 Cal. App. 68, 74 ("a contract is not to be held assignable where the parties expressly stipulate to the contrary.").

20. Accordingly, applicable nonbankruptcy law does not permit the Debtor to sell the trademarks free and clear of Foster Farms' interest.

**(ii)    Foster Farms Does Not Consent to Assignment of the Trademarks Free and Clear of Its Interest**

21. Given that Foster Farms paid a significant sum to ensure that no one would use the Zacky Farms trademarks in conjunction with the sale of fresh chicken, it does not consent to the sale of the trademarks free and clear of its interest.

**(iii)    Foster Farms' Interest is Not a Lien**

22. Section 363(f)(iii) is applicable only if the interest in question is a lien, and the sale price is greater than the aggregate value of all liens on the property. Foster Farms' interest is not a lien. Therefore, this subsection has no application.

**(iv)    Foster Farms' Interest is Not in Bona Fide Dispute**

23. There can be no bona fide dispute about the plain language of the Trademark License Agreement, which provides that neither "[the Debtor] nor any successor in interest shall have any further right to the Licensed Intellectual Property in connection with the production, sale or

1  distribution of chicken products." (Section 10, emphasis added).  Accordingly, Section 363(f)(4) does
2  not provide a basis for selling the trademarks free and clear of Foster Farms' interest.  *See* Cal. Civ.
3  Code § 1638 (2012) ("The language of a contract is to govern its interpretation, if the language is clear
4  and explicit, and does not involve an absurdity").

5  24.  While the Debtor's specific position with respect to this interest is unknown to Foster
6  Farms, the Debtor may attempt to argue, as it did in its initial brief in support of the Motion [Docket
7  No. 648, p. 11], and its supplemental brief [Docket No. 872, p. 7] that "the propriety of the [interest]
8  does not have to be the subject of an immediate or concurrent adversary proceeding" for it to be in
9  bona fide dispute.  In this manner, the Debtor may attempt to assert, without more, that the extent of
10 Foster Farms' interest is somehow disputed.

11 25.  However, whether Foster Farms' interest is in dispute is a "factually driven" question.
12 *Dewey Ranch Hockey, LLC*, 406 B.R. 30 (Bankr. D. Ariz. 2009) ("*Dewey*").  Indeed, of those cases
13 holding that a dispute does not have to be the subject of an adversary proceeding to be bona fide,
14 *Dewey* notes that "[they] almost universally involved claims of secured creditors where it was virtually
15 obvious that the claimed lien was unperfected or voidable under the Code" *Id*. at 40.

16 26.  *Dewey* is particularly instructive given that there, similar to this case, the creditor
17 possessed a contractual right restraining the debtor from taking a certain act without its consent.  The
18 nuance of this type of interest stands in stark contrast to the straightforward lien cases that the Debtor
19 has cited in previous briefs.  *See In re Octagon Roofing*, 123 B.R. 583 (Bankr. N.D. Ill. 1991) (bona
20 fide dispute as to the voidability of a lien); *In re Collins*, 180 B.R. 447 (Bankr. E.D. Va. 1995) (same);
21 *In re Gaylord Grain L.L.C.*, 306 B.R. 624 (bona fide dispute as to the perfection of a lien).

22 27.  The Court in *Dewey* also noted that it was bound by *In re Vortex Fishing Systems, Inc.*,
23 277 F.3d 1057 (9th Cir. 2002), in which the Ninth Circuit stated that the "mere existence of pending
24 litigation or the filing of an answer is insufficient to establish the existence of a bona fide dispute". *Id*.
25 at 1066. "[The Ninth Circuit], in finding that the claims were subject of bona fide dispute, did so after
26 carefully analyzing the significant factual and legal history of those disputes." *Dewey*, at 39.

27 28.  Here too, if the Debtor in any way disputes Foster Farms' interest in the trademarks, it
28 may not simply assert that they are in dispute in order to satisfy Section 363(f)(4).  Rather, in

1 accordance with *Dewey* and *In re Vortex*, a meaningful record favorable to the Debtor must be established before a determination can be reached as to the good faith of any such dispute. No such record exists here, and the sale of the trademarks free and clear of Foster Farms' interest may not be ordered on this basis.

### (v) Foster Farms Could Not Be Compelled to Accept a Money Satisfaction of its Interest in a Legal or Equitable Proceeding

29. Foster Farms will suffer irreparable harm if the trademarks are sold free and clear of its interest; as a result, a monetary judgment will not satisfy this interest. When Foster Farms purchased the Zacky Farms chicken business, a large part of what it purchased (and allocated as such) was the goodwill and reputation of the brand. *See* Boyce Declaration, Exhibit A. The fact that the goodwill of the Zacky Farms trademarks played such a vital role in the agreements was no accident, as both Foster Farms and Zacky Farms have been strong brands in Northern and Southern California since the 1970s. The historical strength of both the Foster Farms and Zacky Farms brands creates a real risk that should someone use the Zacky Farms trademark, Foster Farms may suffer losses to its competitive position, goodwill and reputation, and customer base. The value of this is intangible and impossible to accurately quantify.

30. Furthermore, no legal mechanism exists by which Foster Farms could be compelled to accept money in lieu of its interest. Therefore, under no circumstances can the Debtor satisfy Section 363(f)(5) under the Ninth Circuit's narrow interpretation of that subsection.

### A. Foster Farms' Interest in the Trademarks Cannot be Satisfied with a Monetary Award

31. As part of the 2001 acquisition, both parties agreed not to use, or allow other parties to use, the Zacky Farms trademarks following the acquisition. *See* Purchase Agreement § 5.13; Trademark License Agreement § 10. It is well-established that trademark misuse is irreparable and warrants injunctive relief to stop it, not monetary damages. *Power Balance LLC v. Power Force LLC*, Case No. SACV 10-1726, 2010 U.S. Dist. LEXIS 136574, at \*17, \*20 (C.D. Cal. Dec. 14, 2010) (granting plaintiff's motion for a preliminary injunction and noting "[i]njunctive relief is the remedy of choice for trademark and unfair competition claims" because if the infringer "continues using a similar

1  mark, Plaintiff stands to lose the 'investment and competitive position' it has acquired through its
2  trademark.") (internal citations omitted).

3        32.    Similarly here, Foster Farms' 2001 acquisition of the Zacky Farms chicken business
4  was strategic in that Foster Farms sought to strengthen and enhance its own business through the
5  acquisition. Should Pitman obtain the Zacky Farms trademarks free and clear, Foster Farms would
6  face a competitive disadvantage given the "investment and competitive position" that it has developed
7  over the past eleven years since acquiring the Zacky Farms chicken business. This disadvantage is not
8  readily ascertainable in money damages. *Power Balance LLC*, 2010 U.S. Dist. LEXIS 136574, at *17;
9  *see also Stanislawski v. Jordan*, 337 F. Supp. 2d 1103, 1117-28, 1120 (E.D. Wis. 2004) (granting
10 preliminary injunction because the defendant sold knock-off products that resembled those of the
11 plaintiff: the court found that plaintiffs faced a possible "loss of profits" because defendant "may be
12 directly competing" with plaintiff).

13       33.    Foster Farms would also risk a loss of customers. In a variety of circumstances, courts
14 have held that it is difficult to ascertain monetary damages when the plaintiff's future relationship with
15 a customer has been compromised. *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999)
16 (finding irreparable injury where "it would be very difficult to calculate monetary damages that would
17 successfully redress the loss of a relationship with a client that would produce an indeterminate amount
18 of business in years to come."); *see also Nat'l Elevator Cab & Door Corp. v. H & B, Inc.*, Case No. 07
19 CV 1562, 2008 U.S. Dist. LEXIS 5389, at *18-19 (E.D.N.Y. Jan. 24, 2008) (irreparable injury existed
20 because "it would be difficult to calculate monetary damages that would redress the loss of [plaintiff's]
21 long-term, ongoing relationships with its primary customers (assuming a finding of causation) and its
22 potential relationships with future customers"). Foster Farms faces the same risks here.

23       34.    Furthermore, should Pitman be permitted to use the Zacky Farms trademarks, it would
24 be in essence misappropriating goodwill that Zacky Farms sold to Foster Farms. Courts routinely
25 recognize that a loss of goodwill constitutes irreparable injury that cannot be compensated by a
26 monetary judgment. *See MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007)
27 ("Harm to business goodwill and reputation is unquantifiable and considered irreparable"); *see also*
28 *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th

1 Cir. 1994) ("the threat of a permanent loss of customers and the potential loss of goodwill also support a finding of irreparable harm").

35. Finally, it is unclear to what extent Pitman's future use of the Zacky Farms trademarks on fresh chicken products would have on Foster Farms' future profitability. For example, in order to counter the use, Foster Farms would likely need to incur substantial cost in developing new promotional and competitive strategies to address the new threat. *See, e.g., Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006) (in a trade secrets case, it is "very difficult to calculate the monetary damage" because "given the difficulty in ascertaining empirically how much of a competitive advantage such information gives [plaintiff] and/or how much detriment it might cause to the future profitability of [the affected] products") (citation omitted). The same reasoning applies here.

36. For the numerous reasons discussed above, monetary damages are simply inadequate to compensate Foster Farms for its interest in the trademarks.

**B.    The Ninth Circuit Applies Section 363(f)(5) in a Narrow Set of Circumstances**

37. The Ninth Circuit Bankruptcy Appellate Panel has interpreted Section 363(f)(5) narrowly. The relevant question is not whether the interest is compensable monetarily but whether "a mechanism exists to address extinguishing the lien or interest without paying such interest in full." *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 41 (B.A.P. 9th Cir. 2008) (internal citation and quotation marks omitted). According to the panel, this approach "leads to a relatively small role for paragraph (5)." *Id*.

38. The panel also gives several examples of when Section 363(f)(5)'s "small role" might come into play: "a buy-out arrangement among partners, in which the controlling partnership agreement provides for a valuation procedure that yields something less than market value of the interest being bought out…. [or] a case in which specific performance might normally be granted, but the presence of a liquidated-damages clause allows a court to satisfy the claim of a nonbreaching party in cash instead of a forced transfer of property." *Id*. at 42.   None of those situations apply here, and importantly, as is the case here, "if the interest is such that it may be vindicated only by compelling or

1 restraining some action, it does not qualify under this aspect of § 363(f)(5), and the estate cannot sell

2 free and clear of that interest." *Id*.

3     39.    As a result, Section 363(f)(5) does not provide the Debtor with a basis for transferring

4 the trademarks free and clear of Foster Farms' interest, and Foster Farms faces a real and imminent

5 risk of irreparable injury should Pitman be permitted to use the Zacky Farms trademarks in violation of

6 the 2001 Purchase and Trademark License Agreements.

## POINT III

### THE TRADEMARK LICENSE AGREEMENT IS NOT AN EXECUTORY CONTRACT THAT MAY BE REJECTED

    40.    Nor can the Debtor circumvent Section 363 by claiming that the Trademark License Agreement is executory and may be rejected.

    41.    Notably, an executory contract requires material obligations to be outstanding on *both* sides. *In re Wegner*, 839 F.2d 533, 536 (9th Cir. 1988) ("Although the Code does not define 'executory contract,' courts have generally defined such a contract as one on which performance is due to some extent on both sides"). Here, Foster Farms' primary obligation under the Trademark License Agreement was to pay for the restriction on the Debtor's use of the trademarks. Foster Farms provided this substantial consideration in 2001, at which time its interest in the trademarks vested. Moreover, the temporary, 36-month license period, in which Foster Farms itself had the right to use the trademarks in connection with chicken products, has long since elapsed. *See* Trademark License Agreement § 10. Accordingly, Foster Farms has no remaining unperformed obligations under the Trademark License Agreement, and the agreement cannot be classed as executory.

    42.    In remarkably similar circumstances, the Third Circuit (including a Senior Ninth Circuit Judge sitting by designation) in *In re Exide Techs.*, 607 F.3d 957, 964 (3d Cir. 2010) denied a debtor's attempt to use the contract rejection provisions of Section 365 to reclaim its right to use a trademark which it had bargained away more than 10 years earlier through an asset sale. The court rejected the claim that the parties' asset purchase agreement and related agreements remained

executory over 10 years later.[1]  In particular, it held that a use restriction on the trademark "is not a material obligation because it is a condition subsequent." *Id*. at 963.  It further held that indemnity obligations, and further assurance obligations were not sufficiently material to render the contract substantially unperformed and, therefore, executory.

43.     Just as in *In re Exide Techs*, the Debtor cannot identify any remaining obligations of Foster Farms under the Trademark License Agreement.  607 F.3d at 963-64.  Accordingly, the agreement is not an executory contract and the Debtor cannot reject it.

## CONCLUSION

44.     For the foregoing reasons, Foster Farms objects to the Debtor's Motion.  The requirements of Section 363(f) are not satisfied, and those requirements cannot be circumvented by rejection of the Trademark License Agreement.  Therefore, the sale may not proceed without specific assurances that title to the trademarks will pass ***subject to***, not free and clear of, Foster Farms' interest.

Dated: February 5, 2013              Respectfully submitted,

BLAKELEY & BLAKELEY LLP

By:  /s/ *Johnny White*
     Scott E. Blakeley
     Johnny White

*Attorneys for Foster Poultry Farms d/b/a Foster Farms*

---

[1] While the underlying asset purchase agreement and related side agreements in *In re Exide Techs* were treated as one integrated agreement by the litigants, such is not the case here.  The Trademark License Agreement contains an integration clause, and is a standalone agreement.  The Debtor has also treated it, and other agreements related to the 2001 Zacky/Foster transaction, as separate contracts.  *See* Docket No. 400.